HENRY WEIDEMANN vs. THE SPRINGFIELD BREWERIES
COMPANY ET AL.

Third Judicial District, New Haven, January Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

One who acts in reliance upon a representation not addressed to nor
intended for him, does so at his own risk, and cannot make it the
basis of an estoppel.

As a general rule a promissory statement respecting future action can-
not operate as an estoppel.

A party who sets up an estoppel by conduct must show that he exer-
cised due diligence to learn the truth, and that he was destitute
not only of knowledge of the real state of things but also of any
convenient or available means of acquiring such knowledge.

The principle applicable to the marshaling of securities is that a
creditor having two funds to which he can resort, while another
creditor can look to but one of them, must seek satisfaction first
from that fund which is not available to the latter. But where
the rights of third persons have not intervened, it is competent for
the parties to agree that a portion of the security originally pledged
for one debt may be applied by the creditor in reduction or pay-
ment of another debt which is unsecured; and an application thus
made in good faith, and without notice to or knowledge by the
creditor that such change in the disposition of the original secu-
rity will prejudice the interests of any other creditor, will not be
disturbed by a court of equity.

Argued January 23d—decided March 8th, 1906.

SUIT by a junior mortgagee to secure the cancellation and
discharge of a prior mortgage, upon the ground that it had
been paid, and for other relief, brought to and tried by the
Superior Court in New Haven County, *Gager, J.;* facts
found and judgment rendered for the defendants, and appeal
by the plaintiff. *No error.*

*William B. Stoddard* and *George R. Cooley,* for the appel-
lant (plaintiff).

*George D. Watrous,* with whom was *Henry W. Merwin,*
for the appellees (defendants).

TORRANCE, C. J.　In February, 1902, the defendant Schmaelzle mortgaged a piece of land, now said to be worth only about $5,000, to Mrs. Carroll to secure his promissory note to her for $2,500. In June, 1902, he mortgaged the same land, subject to the Carroll mortgage, to his codefendant, the Springfield Breweries Company, to secure his note to it for $7,000; and then in January, 1903, he mortgaged said land, subject to said two prior mortgages, to the plaintiff to secure a note for $5,300. At the time Schmaelzle gave said mortgage to the Breweries Company, he also, as additional security for said note, assigned to it certain sums of money due to him upon certain policies of fire insurance. This insurance-money was afterward paid to the Breweries Company and applied by it, not upon the $7,000 note, but upon an unsecured account current then held by it against Schmaelzle; and the important question in the case is whether that money should have been applied on that note.

The facts found, having any material bearing npon this question, may be stated as follows: Prior to June 25th, 1901, Schmaelzle and the wife of the plaintiff, under the copartnership name of M. Weidemann & Company, had been engaged in the ale and beer business; and on that day Schmaelzle purchased the interest of Mrs. Weidemann in said business, and thereafter, but under the old copartnership name, carried on said business alone, till some time in January, 1903, when he transferred it to the Lion Brewery Company. On May 31st, 1902, the copartnership aforesaid was indebted to the Breweries Company in the sum of $3,914.47, and Schmaelzle individually was indebted to said company in the sum of $6,083.34, making in all the sum of $9,997.81. On the 4th day of June, 1902, Schmaelzle and the Breweries Company consummated an agreement, the substance of which may be stated thus: (1) Schmaelzle was to give the Breweries Company his note for $7,000, secured by a mortgage upon the land described in the complaint, and also by an assignment of the insurance-money due to him upon certain policies of fire insurance; (2) the Breweries Company was to furnish Schmaelzle with " a continuing

personal credit for such sums as were due or might become due " in excess of said $7,000, and not to exceed $3,000; (3) the Breweries Company was to retain their right to collect the copartnership debt from Mrs. Weidemann.

The note, mortgage and assignment, called for by said agreement, were on the day last aforesaid delivered to said Breweries Company; and it, on the same day, delivered to Schmaelzle a letter (Exhibit 1) which, after reciting the delivery to it of said note, deed and assignment, proceeds as follows: " In addition thereto you have to-day assigned to us all your claims for unpaid insurance upon the brewery property in Allingtown formerly owned by you, and have assigned to us a third mortgage for $1,500, and the promissory note of William McGushin, secured thereby, upon property situated in New Haven, and known as the McGushin property. This has been done by you in order to furnish us security for your account with us to the extent of $7,000. Of course only the net amount realized to us out of said insurance, after payment of all expenses of collection, including attorney's fees, will be credited to you. When this indebtedness has been paid in full, we will reassign to you the McGushin mortgage. Nothing in the way of security furnished to us by you shall affect the claim which we have against Mrs. Mary Weidemann for $3,914.47, due us from Weidemann & Company at the time when you purchased Mrs. Weidemann's interest in the brewery business, and we shall not release her until your entire indebtedness to us has been fully paid."

" At some time prior to January 27th, 1903—at just what time is uncertain—the Breweries Company and Schmaelzle had come to an agreement by which said insurance-moneys referred to in Exhibit 1 were to be applied on the current unsecured account of said Schmaelzle with said Breweries Company. At the time of such agreement said Schmaelzle was and ever since has been indebted to said Breweries Company on unsecured and running account in more than $3,000." On January 27th, 1903, the Breweries Company collected the copartnership debt hereinafter referred to,

amounting to $3,914.47, which the court applied on the $7,000 note; and about this application no question is made.

On January 27th, 1903, Schmaelzle applied to the plaintiff for a loan of money, showed him Exhibit 1, told him that the debt due from the old firm had been paid on said $7,000 note, and that the insurance-money when paid would be applied on said note and would pay the same in full. Relying upon this the plaintiff loaned Schmaelzle $5,300, taking as security therefor the mortgage hereinbefore mentioned. The plaintiff knew nothing of the later agreement between Schmaelzle and the Breweries Company, to apply the insurance-money upon the unsecured account, until long after he had made said loan; and the Breweries Company knew nothing of the plaintiff's loan and mortgage until long after the insurance-money had been paid and applied on account current. On the 26th of February, 1903, the insurance-money was paid to the Breweries Company. It amounted to the sum of $3,219.48, and was applied upon, and absorbed by, the unsecured debt then due from Schmaelzle to said Company. These are the controlling facts found.

In one of the reasons of appeal, it is claimed that the trial court erred in finding that the agreement to apply the insurance-money on the unsecured debt was in fact made, and also in finding that that money had been in fact so applied.

That claim finds no support in the record. Whether such agreement was in fact made, and whether such application was in fact made, were questions of fact, and there is nothing in the record to show that the court erred in deciding as it did.

The other reasons of appeal resolve themselves into these two claims: (1) that, as against the plaintiff, the Breweries Company is estopped from claiming that the insurance-money was not applied on the mortgage debt; (2) that, independently of this matter of estoppel, the plaintiff, upon the facts found, was entitled to have the insurance-money applied upon the mortgage debt. The estoppel is based upon two assumptions: (1) that Exhibit 1 contains a rep-

resentation by the Breweries Company that the insurance-money, when received, would be applied upon the mortgage debt; and this we think is true; (2) that the plaintiff had the right to rely upon that representation; and this we think is not so, because it was not made to, nor intended for, the plaintiff by the Breweries Company, nor was the representation one of fact.

As a general rule, to constitute an estoppel by conduct, the representation must have been made, by the party making it, to the party setting up the estoppel; or it must have been of such a nature, and made under such circumstances, that the party making it must be taken to have contemplated that it would be communicated to, and acted upon by, the other party. 2 Pomeroy's Eq. Jurisp. (1st Ed.) 264; *Hodge* v. *Ludlum*, 45 Minn. 290; *Preston* v. *Mann*, 25 Conn. 118; *Danforth* v. *Adams*, 29 id. 107; *Walker* v. *Vaughn*, 33 id. 577; *Farist's Appeal*, 39 id. 150; *Canfield* v. *Gregory*, 66 id. 9, 17; *Stevens* v. *Ludlum*, 46 Minn. 160, 13 L. R. A. 270; 16 Cyc. p. 726. Measured by this rule the plaintiff, upon the facts found, had no right to reply upon the representation here in question. " If one act on a representation not made to nor intended for him, he will do so at his own risk." *Stevens* v. *Ludlum*, 46 Minn. 160, 161; *Kinney* v. *Whiton*, 44 Conn. 262.

Furthermore, the representation relied upon was an agreement to do something in the future, a promissory statement or representation, and not the statement or representation of a past or present fact. It was an agreement which the contracting parties had a right to change or abrogate at will. As a general rule, to which the case at bar forms no exception, such a representation cannot be the basis of an estoppel. *Allen* v. *Rundle*, 50 Conn. 9, 29; *Marsh* v. *Bridgeport*, 75 id. 495, 500; *Insurance Co.* v. *Mowry*, 96 U. S. 544; *White* v. *Ashton*, 51 N. Y. 280; 16 Cyc. p. 726.

Moreover, a party setting up an estoppel by conduct must show that he exercised due diligence to know the truth; *Morgan* v. *Farrel*, 58 Conn. 413, 427; *Huntley* v. *Holt*, ibid. 445, 450; *Lyon* v. *Champion*, 62 id. 75, 78; and that

he was destitute not only of knowledge of the true state of things "but also of any convenient or available means of acquiring such knowledge." *Brant* v. *Virginia C. & I. Co.*, 93 U. S. 326, 337; *Atkison* v. *Plum*, 50 W. Va. 104, 58 L. R. A. 788; 16 Cyc. p. 738. It does not appear that the plaintiff used due diligence to know the truth about the disposition of the insurance-money; and he did not apply for knowledge upon that subject to the Breweries Company, from whom he would undoubtedly have learned the truth about the disposition of that money.

For these reasons the claim of estoppel made by the plaintiff was properly overruled.

The next question is whether, independently of the question of estoppel, the plaintiff is entitled to have the insurance-money applied upon the mortgage debt. The claims of the plaintiff on this part of his case seem to be based upon the principles usually applied in the marshaling of assets. The general principle applied in such process is this: that a creditor of *A*, having a right to satisfy his debt out of two funds, *X* and *Y*, to but one of which, *Y*, another creditor of *A* can resort, shall be compelled to exhaust *X* before coming on *Y*. *Quinnipiac Brewing Co.* v. *Fitzgibbons*, 73 Conn. 191; 19 Amer. & Eng. Ency. of Law (2d Ed.), p. 1256. At the time the plaintiff made his loan, the Breweries Company did not have, nor has it since had, two funds to which it could resort for the payment of its mortgage debt; it had one fund to which it could resort for the payment of that debt: the land mortgaged, which was insufficient for that purpose; and it had another fund—the insurance-money—to which it could resort for payment of an account current, otherwise unsecured. All that the Breweries Company did, of which the plaintiff complains, was done by it in total and innocent ignorance that the plaintiff had any interest in the mortgaged land, or in the insurance-money, or that any rights of the plaintiff would be in any way affected by the conduct of the Company. Under such circumstances the principles usually applied in the process of marshaling assets are wholly inapplicable. The agreement to apply the insurance-

money upon the mortgage debt was made in June, 1902. The only parties then interested in the matter were the two defendants. They at this time, and at any time before they had notice of the plaintiff's rights in the matter, could abrogate that agreement and agree to dispose of that money otherwise, as they saw fit. Later on, and before the plaintiff had any rights in the land or the money, the defendants agreed, and for aught that appears, in good faith and for valuable consideration, to apply the insurance-money upon the unsecured debt. Subsequently, and before the Breweries Company had notice or knowledge of the plaintiff's interest in the matter, the insurance-money was applied upon and absorbed by the unsecured account current. In all this the Breweries Company acted in good faith, and its conduct toward the plaintiff appears to have been free from fraud or wrong-doing of any kind. Upon the facts found the plaintiff, as against the Breweries Company, was not entitled to have the insurance-money applied upon the mortgage debt.

There is no error.

In this opinion the other judges concurred.