PET CAR PRODUCTS, INC. *v.* HARRY BARNETT ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued June 6—decided October 2, 1962

*Louis Feinmark,* with whom was *James R. Green-field,* for the appellant (plaintiff).

*William R. Murphy,* with whom were *Donald F. Keefe* and *Howard R. Maskof,* for the appellees (defendants).

ALCORN, J. The plaintiff, owner of real estate within an area designated by the New Haven Redevelopment Agency as the Wooster Square redevelopment and renewal area, brought this action to enjoin the agency and the city of New Haven from proceeding further to acquire its property. The clerk of the Superior Court at New Haven was made a defendant because of his statutory duty to issue a certificate of taking in connection with the condemnation proceedings sought to be enjoined. General Statutes § 8-129. The plaintiff has appealed from a judgment for the defendants and from the denial of a motion to open the judgment.

The trial concerned the procedures authorized by chapter 55 of the 1955 Cumulative Supplement, now chapter 130 of the General Statutes, relating to redevelopment and urban renewal. The underlying questions presented on the appeal are whether the agency, in approving a redevelopment plan, properly determined under § 484d (b) of the 1955 Cumulative Supplement, now § 8-125 (b) of the General Statutes, that the acquisition and clearance of the plaintiff's property were essential to complete an adequate unit of development and whether, under the circumstances involved, the agency is estopped from taking the property. The method adopted to present the issues follows a course which we have repeatedly and emphatically criticized. *Krupa* v. *Farmington River Power Co.,* 147 Conn. 153, 157, 157 A.2d 914, appeal dismissed, 364 U.S. 506, 81 S. Ct. 281, 5 L. Ed. 2d 258; *Bent* v. *Torell,* 139 Conn. 744, 747, 97 A.2d 270. The finding of the court contains 287 paragraphs. The assignment of errors attacks ninety-seven of them, although the attack on three of them is later abandoned in the brief. In addition to this bludgeoning of

substantially one-third of the finding, the plaintiff assigns error in the failure of the court to find forty-five paragraphs of the draft finding. "Such a wholesale attack upon the finding is rarely productive of beneficial results." *Krupa* v. *Farmington River Power Co.,* supra. The proposition holds true in the present case. The court has, by reference, incorporated a large number of the exhibits in the finding, thereby presenting the basic facts in considerable detail. Both the subordinate facts found and the conclusions therefrom are fully supported. The recitals which the plaintiff would have added to the finding are immaterial, are not admitted or undisputed, or may be found, sometimes in even greater detail than the plaintiff requests, in the finding. The finding is not subject to correction.

The essential facts may be stated as follows: The plaintiff is a Connecticut manufacturing corporation. In 1953, it bought a brick building at 185 Wallace Street in New Haven, with the land on which it stood. From then until 1957, the plaintiff conducted its business partly at that location and partly in rented premises on Factory Street in New Haven. In June, 1955, having first obtained a building permit and a zoning variance to permit an industrial use, the plaintiff purchased additional land, with a frame building thereon, at 191-195 Wallace Street and in the rear of 189 Wallace Street. The plaintiff then built a cinder-block building on the newly acquired land, the construction of which was finished before the end of 1955. In December, 1956, the plaintiff obtained a building permit and started the construction of a second cinder-block building on the Wallace Street land.

The idea of a plan for what came to be known as the Wooster Square redevelopment area was initi-

ated by residents of the area at a public meeting on May 25, 1955. The area was 62.4 percent residential. Thereafter, the New Haven Redevelopment Agency, hereafter referred to as the agency, prepared, shortly before July, 1955, a "Survey and Planning Application" for submission to federal authorities. The purpose of the application was to obtain federal funds for detailed studies and plans looking toward the possible adoption of a redevelopment and renewal plan. No definite plan had been formulated by the agency or by any other body, however, at this time. In February, 1956, the federal authorities approved the advance of federal funds for the desired purpose, and surveys, studies, inspections and appraisals were made in the area from February, 1956, to June, 1957. As a part of this procedure, the plaintiff's property was studied, and, in April, 1957, it was appraised for the agency. About March 20, 1956, the agency notified the plaintiff that it must move its business from the rented premises on Factory Street because that property was being taken as a part of another project known as the Oak Street redevelopment. In May, 1956, a representative of the agency offered the plaintiff assistance in relocating its Factory Street business, but the plaintiff declined the offer, stating that its attorney was handling its relocation and that it would make its own arrangements. Thereafter, during the summer of 1957, the plaintiff moved its Factory Street operations to its Wallace Street property.

In June, 1957, the agency submitted a report and an application to the urban renewal administration for a loan and grant for the redevelopment of the Wooster Square area. It was not until a year later, however, in June, 1958, that the urban renewal ad-

ministration approved the agency report and the application for the loan and grant. Thereupon, pursuant to proper notice, the agency held a public hearing on June 30, 1958. On the basis of the material presented at the hearing and in the various studies, reports, surveys, inspections and appraisals, the agency, after its members had toured the area, adopted a declaration of findings and a resolution formally approving the Wooster Square redevelopment and renewal plan on July 3, 1958. The area involved in the plan includes between fifty and sixty city blocks comprising about 236 acres. The plaintiff's property is within a four-block section, planned for industrial use, which is at the northeast corner of the 236-acre redevelopment area. At the public hearing on June 30, 1958, all interested persons were given an opportunity to be heard, and they were allowed an additional opportunity, until the morning of July 3, to file written statements with the agency before it acted on the proposed plan. After the agency had approved the plan, it submitted it to the board of aldermen of New Haven, a committee of which also held a public hearing on the plan. The plaintiff did not appear, and was not represented, at either the hearing before the agency or the hearing before the committee of the board of aldermen, nor did the plaintiff submit any written statement to the agency prior to its decision.

The agency found that the Wooster Square redevelopment and renewal area was deteriorated, substandard and detrimental to the health, morals and welfare of the community; that it consisted partly of vacant or unimproved land and partly of land with structures and improvements thereon; and that it included structures not in themselves substandard or insanitary. It further specifically

found the elimination of standard structures, where called for by the plan, to be essential to an adequate unit of development. It found that within the entire 236 acres covered by the plan only 31.7 acres were then devoted to industrial uses. Only seven of the existing 115 industrial structures were found to be satisfactory. It found the block in which the plaintiff's property was located to be a slum in the worst sense. That block, with the remainder of the four-block area designated for industrial use, which was found to be equally a slum, was planned for total clearance. The court inspected the plaintiff's property and the four-block area. From the evidence before it, and after inspecting the property, the court found that the brick and the frame buildings on the plaintiff's property are substandard, while the two cinder-block buildings, from a physical standpoint, are in fair condition and not substandard. It found, however, that the plaintiff's property, taken as a whole, is substandard, in view of its present condition and site.

During the three years between the first planning application to the federal authorities in July, 1955, and the agency's formal action on July 3, 1958, no definite plan was formulated for the Wooster Square area. The area had, however, been one of the subjects included in planning studies adopted by the city plan commission and approved, after public hearing, by the board of aldermen in 1951, 1953 and 1957. The agency heard nothing from the plaintiff for more than a year after the redevelopment and renewal plan was approved on July 3, 1958. On July 28, 1959, however, the plaintiff's president and its attorney advised a representative of the agency that it would like to remain at its location on Wallace Street. From then until

April, 1961, repeated discussions took place between representatives of the plaintiff and representatives of the agency in the same manner as with any re-developer on the subject of what, if anything, might be done to enable the plaintiff to continue the occupancy of its property and, at the same time, conform to the plan of redevelopment. Various factors entered into the discussions. The plaintiff's property did not conform to the standards of the agency's plan concerning off-street loading facilities, parking facilities, truck maneuvering space and minimum setbacks. If the plaintiff's buildings were permitted to remain, an L-shaped parcel difficult to dispose of because of its configuration would exist, the required setbacks would leave a very narrow strip of land on one street on which it would be difficult to erect a sizable building, and there would be an inefficient utilization of land and unsatisfactory provision for truck turning areas. The plaintiff's property was so located as to be of key importance to the suitable development of the remainder of the proposed industrial area, and the structures on it would tend to establish the character of the area for other industrial users. It was reasonably probable that the agency would not be able to attract a developer to the block in which the plaintiff's property was located if its buildings were permitted to remain.

During these negotiations, in which the court found that the plaintiff was treated with fairness, courtesy and consideration, real estate men were consulted, various planning layouts were considered and a city planner engaged by the plaintiff admitted that reasonable men could differ as to whether an adequate unit of development would be left if the plaintiff's buildings were permitted to remain.

While the discussions were going on, the agency, on March 9, 1961, revised the redevelopment plan to permit wholesale distribution or service uses as well as the originally intended industrial uses in the proposed industrial area. This revision, however, did not affect the unfavorable influence of the plaintiff's buildings on the adequacy of the unit of development. During the period of negotiations, the agency also was advertising and offering inducements to obtain developers in the area, and one prospective developer was dissuaded in part by the shape of the parcel created in the block in which the plaintiff's property was situated by the presence of the plaintiff's buildings. The agency did, however, have promising negotiations with other industries interested in locating in other portions of the industrial area. The plaintiff was asked to propose a solution for the use of its existing buildings conformable to the redevelopment plan, but it offered none. Finally, about April 28, 1961, the agency caused a "Notice of Taking" to be served on the plaintiff and filed, pursuant to § 8-129 of the General Statutes, a statement of compensation with the clerk of the Superior Court. On May 5, 1961, before a certificate of taking was issued by the clerk, this action was instituted.

There is no claim that the entire redevelopment area, the proposed industrial section thereof, and the block in which the plaintiff's property is located are not deteriorated, substandard, and a proper subject for redevelopment. The claim is that the agency acted illegally and arbitrarily in determining that it was essential to an adequate unit of development to acquire and remove the plaintiff's cinder-block buildings. The General Assembly has delegated to the agency the power to prepare a re-

development plan within prescribed limits. Public Acts 1957, No. 13, § 53 (General Statutes § 8-127). Such authority having been reposed in the agency, the agency's decision is conclusive unless, on judicial review, it is found to be unreasonable, or the result of bad faith, or an abuse of the power conferred. *Bahr Corporation* v. *O'Brion,* 146 Conn. 237, 250, 149 A.2d 691; *Gohld Realty Co.* v. *Hartford,* 141 Conn. 135, 146, 104 A.2d 365. While a redevelopment area was, by the statute in force when the agency acted, defined to mean an area which "is deteriorated, substandard or detrimental to the safety, health, morals or welfare of the community," such an area was expressly permitted to "include structures not in themselves substandard or insanitary which are found to be essential to complete an adequate unit of development, provided that the redevelopment area is deteriorated, substandard or detrimental." Cum. Sup. 1955, § 484d (b). The statute, which was amended in 1959 (Public Acts 1959, No. 397, § 2) to include a deteriorating as well as a deteriorated area, is now General Statutes § 8-125 (b).

In the determination whether property which is not substandard is essential to the plan of redevelopment, "it is the condition obtaining as to the entire area and not as to individual properties which is determinative." *Graham* v. *Houlihan,* 147 Conn. 321, 328, 160 A.2d 745, cert. denied, 364 U.S. 833, 81 S. Ct. 70, 5 L. Ed. 2d 57. The declared public purpose of redevelopment is the elimination of slums and blighted areas. Cum. Sup. 1955, § 483d (as amended, General Statutes § 8-124). To prevent the area from reverting to its former status, adherence to the redevelopment plan is required. *Gohld Realty Co.* v. *Hartford,* supra, 143. The con-

dition of the plaintiff's buildings and the use to which they are devoted have significance, therefore, on the question whether they could be successfully integrated into the overall plan for the area in order to achieve its objective. If they could not be, then the acquisition of the property was essential to complete an adequate unit of development, even though the property was not, in itself, substandard. The court has found, from the evidence before it and from a visit to the area, that two of the plaintiff's buildings are substandard. The plaintiff does not dispute this finding as to the frame building. The court has also found that the plaintiff's entire property in its existing condition and location is substandard. From the record before us, we cannot say that these findings were unwarranted. The declaration of the findings of the agency does not specifically describe the plaintiff's buildings as falling within one or the other category. Nor was it necessary, for the purposes of the agency's ultimate conclusion, that it do so.

The plaintiff argues that the agency was required to find from a specific physical examination of the buildings that their acquisition was essential to the overall plan, and to survey, in advance of its conclusion, the "reuse potential" of the property. On this premise, it is claimed that for the agency to acquire and demolish the cinder-block industrial buildings in a redevelopment area planned for industrial purposes, with no immediate plan for a reuse, would be an unlawful acquisition of property and would entail an unlawful expenditure of public funds. The plaintiff misconceives the agency's responsibility to consider the condition obtaining in the entire area rather than the condition of the individual property. *Graham* v. *Houlihan,* supra. It

is apparent that congestion, insufficient parking and maneuvering areas, proposed street layouts and setback lines, and the boundaries of the plaintiff's property within its block were pertinent problems facing the agency in its planned redevelopment of the area. Not to be overlooked, also, were the prominent position, in the area, of the cinder-block buildings and the effect they would exert on the tone of future building which the plan was designed to attract.

The court was correct in concluding that the agency did not act unreasonably or in excess of its powers in determining that the acquisition of the plaintiff's buildings and the clearance of the area were essential for the completion of an adequate unit of development. *Gohld Realty Co.* v. *Hartford,* 141 Conn. 135, 146, 104 A.2d 365.

The plaintiff also claims that the agency and the city are estopped from taking its property by their action in permitting the plaintiff, through the issuance of building permits and zoning variances, to erect buildings and locate its operations on the property. In general, estoppel may not be invoked against the government or a public agency functioning in its governmental capacity. 31 C.J.S., Estoppel, § 138. The general rule is qualified, however, in that one may invoke the doctrine where his action has been induced by the conduct of municipal officers and where he would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. *Cities Service Oil Co.* v. *City of Des Plaines,* 21 Ill. 2d 157, 161, 171 N.E.2d 605. "There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act

upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." *Fawcett* v. *New Haven Organ Co.,* 47 Conn. 224, 227; *State ex rel. DeGregorio* v. *Woodruff,* 135 Conn. 31, 36, 60 A.2d 653; *Tradesmens National Bank* v. *Minor,* 122 Conn. 419, 424, 190 A. 270. Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. *Linahan* v. *Linahan,* 131 Conn. 307, 327, 39 A.2d 895; *Myers* v. *Burke,* 120 Conn. 69, 76, 179 A. 88; *Weidemann* v. *Springfield Breweries Co.,* 78 Conn. 660, 664, 63 A. 162.

When we review the facts found by the trial court in the light of these principles, it is apparent that the plaintiff purchased all of the Wallace Street property, obtained a zoning variance and secured building permits, all before any notion of a redevelopment of the Wooster Square area was in other than embryonic form. When the plaintiff was required to vacate its rented premises on Factory Street because of the Oak Street redevelopment, it expressly disclaimed any advice or assistance from the agency and undertook to move its operations to the Wallace Street site on its own judgment and initiative. Beyond that, the plaintiff, having been the victim of the Oak Street redevelopment, was peculiarly attuned to the necessity of looking into any like dangers in a new location. Nevertheless, the plaintiff points to no effort even to make inquiry. When public hearings were held, it did not undertake to appear or to be represented. The record is completely silent regarding any steps

taken by the plaintiff, until a year after the agency had acted, to ascertain the details of the project or its impact on the plaintiff's property. There is no showing that the agency or the city did anything to induce the plaintiff's action or that the plaintiff relied on any judgment but its own, or that it took any pains to investigate. The court was correct in concluding that there was no estoppel.

The plaintiff's final claim is that the court erred in failing to open the judgment. Following the rendition of the judgment, the plaintiff filed a motion to open it supported by an affidavit. The motion recited, in substance, that since the close of the trial a person had appeared who was "ready, able and willing to develop the area abutting and adjoining the plaintiff's property" and that the proposal of this person had been presented to the redevelopment agency since the trial of the case and was unknown at the time of the trial. The affidavit made by this person recited, in substance, that the affiant was "prepared to make arrangements with . . . [the plaintiff] to allow . . . [the plaintiff] additional land adjoining or abutting its properties, so as to give it a greater area for parking and loading facilities." The affidavit further recited that the affiant had been told that the agency was considering his proposal and would advise him of its requirements; that he was ready, able and willing to meet the requirements; and that his proposal "contemplates a use of the land area which will furnish the full amount of floor space called for by the Plan." At the hearing on the motion, the affiant was present in the courtroom but was not offered by the plaintiff as a witness. The court had before it, therefore, only the limited showing in the affidavit and concluded from it that the suggested

material was merely cumulative and would probably lead to no different result. The court denied the motion. Action on such a motion calls for the exercise of the court's discretion and is reviewable only in case of abuse. *Cichy* v. *Kostyk,* 143 Conn. 688, 697, 125 A.2d 483; *Kane* v. *Kane,* 118 Conn. 291, 294, 172 A. 84; *McCulloch* v. *Pittsburgh Plate Glass Co.,* 107 Conn. 164, 167, 140 A. 114; *Wood* v. *Holah,* 80 Conn. 314, 315, 68 A. 323. The elements of additional land or additional floor space were only part of the factors properly entering into the determination by the agency that the plaintiff's property was essential to an adequate unit of development. The court did not abuse its discretion in denying the motion.

There is no error.

In this opinion the other judges concurred.