### RAYMOND'S BUILDING SUPPLY, INC. *v.* DANBURY SAVINGS AND LOAN ASSOCIATION, INC.

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1179

Argued April 21—decided October 1, 1982

*Jeffrey B. Sienkiewicz,* with whom, on the brief, was *Nancy R. Sienkiewicz,* for the appellant (defendant).

*Richard Bruno,* for the appellee (plaintiff).

SPADA, J. The issue raised on appeal is whether the defendant mortgagee is equitably estopped from distributing unadvanced construction mortgage proceeds to its subsidiary as against the redeeming plaintiff mortgagee. The relevant facts necessary to understand this dispute are as follows: On November 19, 1976, the defendant, Danbury Savings and Loan Association, Inc., loaned the principal sum of $55,000 to John Pasqua, Jr., a builder in Woodbury. To secure this loan, Pasqua conveyed to the defendant a mortgage securing future advances on lot No. 15, Flanders West, Woodbury. On June 23, 1977, D. S. & L. Corporation, a wholly owned subsidiary of the defendant (hereinafter subsidiary), loaned to Pasqua $7000 payable on demand with interest.

As a condition of the $7000 loan, Pasqua assigned to the subsidiary a claim on the future proceeds of the $55,000 construction mortgage. In effect, the defendant collateralized an otherwise unsecured note for its subsidiary. The assignment was attached to and became a part of the defendant's records to which the defendant would refer when making advances or when determining payoff figures.

On May 2, 1977, the plaintiff, Raymond's Building Supply, Inc., was owed $15,000 by Pasqua for materials purchased and used in the construction of a dwelling on lot No. 15. To satisfy this obligation, Pasqua executed a note and mortgage on lot No. 15. The plaintiff's mortgage was subsequent to the mortgage held by the defendant and to another held by Demetrius Enterprises, Inc., the foreclosing security creditor.

By September 1, 1977, with building activity at a standstill, the defendant had advanced to Pasqua $38,324.89 of the mortgage proceeds. The sum ad-

vanced matched proportionately the level of construction work completed. Sometime during September, 1977, the plaintiff's president, Raymond Rinaldi, telephoned and conferred with Peter Filous, a vice president of both the defendant and the subsidiary, concerning the unpaid balance owed by Pasqua on the construction mortgage debt. Filous represented that Pasqua owed the defendant between $38,000 and $39,000 on the mortgage and that no further monies were going to be advanced to him.

On November 23, 1977, Demetrius Enterprises, Inc., commenced an action to foreclose its mortgage. The defendant was not named a party to the foreclosure proceedings. On October 27, 1977, the defendant, through its assistant vice president, Paul Westbrook, advised Stephen Hilcoff, counsel for Demetrius Enterprises, Inc., that the mortgage balance was $38,324.89 plus accrued interest. The defendant was aware at all pertinent times that a foreclosure proceeding on lot No. 15 was being processed.

A judgment of foreclosure was entered on February 17, 1978; the plaintiff redeemed on April 3, 1978. On April 6, 1978, Westbrook advised Rinaldi that the balance due on the construction loan was $48,158.07. This sum included the construction advances plus $7763.91, representing payment of the June, 1977, note from Pasqua to the subsidiary. Subsequent to redemption, the plaintiff completed the dwelling at a cost of $124,000 including the sum of $48,158.07 paid to the defendant for release of the Pasqua mortgage. The dwelling was eventually sold for $110,000, netting the plaintiff a loss of $14,000. The plaintiff brought this action to recover $7763.91, which it paid under protest to the defendant.

The trial court held that the defendant was equitably estopped from retaining the disputed proceeds that it received from the plaintiff to release the subject mortgage.

## I

The defendant's first assignment of error is that the trial court erred in admitting Hilcoff's testimony concerning the defendant's employees' representations as to the mortgage balance due. The defendant claims that the testimony was immaterial and irrelevant. Westbrook and Filous, both vice presidents of the defendant, testified that they had no knowledge of the Demetrius foreclosure until April, 1978, and that they advised inquiring parties that the mortgage balance was money advanced plus $7000 due on the assigned note. The defendant contends that Hilcoff's testimony exceeded the scope of the pleadings.

Although we acknowledge that "[i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings"; *Lesser* v. *Altnacraig Convalescent Home, Inc.,* 144 Conn. 488, 491–92, 133 A.2d 908 (1957); the disputed testimony is not outside the scope of the issues raised by the pleadings. The complaint alleges that the plaintiff redeemed the property based on the defendant's representation that the mortgage balance was $38,324.89, when, in fact, the balance claimed and paid was $48,776.82. The defendant's denial of this allegation clearly made Hilcoff's testimony both material and relevant.

Relevant evidence is evidence which has a logical tendency to aid the trier in the determination of an issue. *Pitt* v. *Kent,* 149 Conn. 351, 357, 179 A.2d 626 (1962). The question of relevance must depend upon all the considerations, including time, the character of the evidence and all the surrounding circumstances which, in the opinion of the court, appear to have a bearing upon its worthiness to be brought into consideration and determination of the matter in contention. Holden & Daly, Connecticut Evidence § 67 (d). Moreover, the plaintiff correctly contends that Hilcoff's testimony undermined the credibility of the defend-

ant's two principal witnesses, Filous and Westbrook. A witness can be impeached by proof that he has made prior statements that are inconsistent with his in-court testimony. *Schurgast* v. *Schumann,* 156 Conn. 471, 482, 242 A.2d 695 (1968). We are satisfied that the contested testimony was relevant and properly admissible on several grounds.

## II

The defendant's second assignment of error is that the finding of estoppel was not supported by the evidence. We do not agree.

The essential elements to an equitable estoppel are the following: " '[T]he party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.' " *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53–54, 184 A.2d 797 (1962).

Our examination of the record reveals sufficient facts from which the trial court could reasonably conclude: (1) that prior to the plaintiff's redemption of the foreclosed premises the defendant through its employees, Filous and Westbrook misrepresented either knowingly or recklessly the amount due on the mortgage balance; (2) that the defendant knew the plaintiff contemplated a risky redemption; (3) that the plaintiff's success or failure depended greatly on the information supplied by the defendant; and (4) that the plaintiff was likely to and did rely upon the defendant's representations to its injury.

We are not unmindful of the sharp division in the evidence presented at trial. It is not, however, our function to attribute evidence to either litigant. In light of the conflicting testimony the trier of fact is privileged to adopt whatever testimony is reasonably believes to

be credible. *Klein* v. *Chatfield,* 166 Conn. 76, 80, 347 A.2d 58 (1974). "The fact-finding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties which is not fully reflected in the cold, printed record . . . ." *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). " 'It is for the trier to pass upon the credibility of witnesses and the weight to be accorded the evidence. This court cannot retry the case.' *Edgewood Construction Co.* v. *West Haven Redevelopment Agency,* 170 Conn. 271, 272, 365 A.2d 819 (1976)." *Mabry* v. *Blakeslee,* 38 Conn. Sup. 338, 340, 446 A.2d 1089 (1982).

## III

The defendant's third claim of error is that the trial court's decision, which is based on the doctrine of equitable estoppel, did not consider the plaintiff's failure to exercise due diligence to ascertain the amount due to the defendant. *Pet Car Products, Inc.* v. *Barnett,* supra. The defendant's thrust is that the evidence does not support the trial court's conclusion that the plaintiff inquired as to the payoff figure "on numerous occasions" prior to its redemption of the property. When the legal conclusions of a court are challenged, the appellate court must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision. *Pandolphe's Auto Parts, Inc.* v. *Town of Manchester,* 181 Conn. 217, 221-22, 435 A.2d 24 (1980).

Upon an examination of the evidence and pleadings in the record, we cannot say that the trial court's conclusion of equitable estoppel is clearly erroneous. Practice Book § 3060D.

It is unessential that we address the defendant's two remaining claims of error as neither is sufficient to alter the results of this appeal.

There is no error.

In this opinion BIELUCH and COVELLO, Js., concurred.