[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal brought by the plaintiff, Maribeth Brown Goulden, as conservatrix of August Delfavero against the Commissioner of the Department of Income Maintenance. She challenges the final administrative determination of the hearing officer affirming the denial of Title XIX assistance to Mr. DelFavero during the period of October 1, 1991 through May 31, 1992 because the plaintiff's assets were in excess of the $1,600.00 standard during that period of time.
The court finds that the plaintiff has demonstrated specific, personal and legal interest in the subject matter of the decision which has been specially and injuriously affected by the agency's decision. Aggrievement has been established. Mystic Marinelife Aquarium v. Gill, 175 Conn. 483, 493 (1978).
The scope of the court's review is limited. Section 4-183(j) of the General Statutes requires that the court affirm the agency's decision unless substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; (6) arbitrary or capricious or characterized by abuse of discretion or clearly CT Page 11372 unwarranted exercise of discretion.
In judicial review of the fifth prong which relates to the determination whether an agency decision is clearly erroneous in view of the record evidence, the so-called substantial evidence rule applies. The rule is similar to "the sufficiency of the evidence" standard applied in judicial review of jury verdicts. Under it, evidence is sufficient to sustain an agency finding if it affords "a substantial basis of fact from which the fact in issue can be reasonably inferred. Lawrence v. Kozlowski, 171 Conn. 705, 713.
The record indicates that Herbert Osber conducted a hearing on the effective date of Mr. DelFavero's Title XIX award.
The hearing officer determined that the district office was correct to deny Title XIX assistance to the appellant during the period of October 1, 1991 through May 31, 1992 on the basis that the appellant's assets were in excess of standard during that period. Uniform Policy Manual No. 4005.10A.2.a. in effect limited assets to no more than $1,600.00 to qualify for eligibility.
The hearing officer found that the plaintiff's assets in the form of bank balances were as follows:
DATE PEOPLE'S ACCOUNT NOS. AMOUNT
 10-91 001-0167615 $ 669.50 001-56167615 2,502.55 01-0274762-03 3,634.19 01-0274763-03 1,615.19 $8,451.43
 11-91 001-0167615 699.50 001-56167615 2,882.66 01-0274762-03 3,648.30 01-0274763 1,621.47 $8,851.93
 12-91 001-0167615 $3,899.50 001-56167615 11.97 01-0274762-03 3,662.02 01-0274763 1,627.57 CT Page 11373 $9,201.06
 1-92 01-0274762 3,674.45 01-0167615 2,074.70 001-5167615 395.18 01-0274763-01 1,633.09 $7,777.42
 2-92 01-0167615 $1,310.70 01-0274762 3,685.36 001-5167615 13.51 01-0274763-01 1,637.94 $6,647.51
 3-92 001-0167615 $ 159.70 001-5167615 396.57 01-0274673-01 1,500.00 $2,056.27
 4-92 001-167615 $ 109.70 001-5167615 396.95 01-0274763-01 1,500.00 $2,006.65
 5-92 001-0167615 $ 109.70 001-5167615 383.04 01-0274763-01 1,500.00 $1,992.74
 6-92 001-167615 $ 60.75 001-5167615 .17 01-0274763-01 1,500.00 $1,560.92
 I
The court will first turn to the issue as to whether the hearing officer correctly determined that the approximate $3,600.00 held in Account No. 01-0274762-03 was not an irrevocable burial fund as defined in the department's Uniform Policy Manual No. 4000.01, and was thus a countable asset excluding Mr. DelFavero from Title XIX benefits for so long as it existed in that form.
Since the burial account was not in compliance with the CT Page 11374 regulations the agency had adopted in its manual until March, 1992, the $3,600.00+ it contained was not able to be excluded from his counted assets, and therefore its continued existence would disqualify the applicant for Title XIX benefits until it had been closed out and turned over to the undertaker.
The manual defined Irrevocable Burial Funds as follows:
 An irrevocable burial fund is a fund held by a licensed funeral director as a result of a contractual arrangement to be released only upon the death of a recipient, but which can be transferred to another funeral director.
Clearly, according to the record, the approximately $3,600.00 held in People's Account No. 01-0274762-03 was not held in the hands of a licensed funeral director for the months of October, November and December of 1991, and January and February of 1992. The hearing officer, therefore, correctly determined that Mr. DelFavero did not qualify for benefits under Title XIX because his burial funds were technically still available to his conservatrix. They were available since they had not been irrevocably deposited with a licensed funeral director as the regulations would require if that sum were to be excluded from countable assets to qualify for the $1,600.00 threshold as the door to Title XIX eligibility. The applicant Delfavero was therefore not eligible for assistance by virtue of the existence of the $3,600.00 bond account for the entire period of its existence through February, 1992. This is so even though the conservatrix set it up on the advice of a member of the Department of Income Maintenance bureaucracy.
 II
The court will now turn to the question of whether the hearing officer correctly determined that index No. 4030.05 and No. 4005.15 of the Uniform Policy Manual, read together, militate that the applicant's direct deposit Social Security checks were countable assets because left in the account over thirty days. This issue has significance because the $3,600.00+ People's account ceased to exist in March of 1992. Whether the monthly Social Security benefit was robe included in each month's assets would affect eligibility based on the CT Page 11375 need to meet the $1,600.00 includable asset ceiling which the regulations set.
Section 4005.15A of the Manual provides impertinent part that at the time of the application, the person seeking assistance "is ineligible for assistance until the first day . . . [he] reduces [his] equity in counted assets to within the particular program asset unit."
Section 4005.15B(a) and (b) provides in pertinent part that if an applicant for assistance "acquires an asset during a month and thereby exceeds the asset limit, eligibility is not affected if . . . [he] properly reduces . . . [his] equity in counted assets to an allowable level by the end of the month." Subsection (b) provides that in the event such a reduction does not occur by such a month's end, that the applicant is "ineligible for assistance for that month, and remains ineligible until the date [he] properly reduces . . . [his] assets to an allowable level."
The regulation is very clear that retention of an acquired asset which would place the applicant above the $1,600 level past the month's end is enough to make an applicant ineligible for Title XIX benefits until the date assets are reduced.
The record must be reviewed to determine if the hearing officer's finding that retention of the Social Security check in the account past month's end made the applicant ineligible was correct. The hearing officer found that:
 [T]he applicant had joint bank accounts with his conservator. The money in these accounts was made up of the appellant's funds solely. It is true the conservator had a right to disperse [sic] money to satisfy the appellant's debts. However, until the disbursements were in fact made, the appellant must be considered as the sole owner of those accounts. Therefore, his countable assets exceeded the asset limit of $1,600.00 until June, 1992. As to the Social Security check which was directly deposited into one of his accounts, that money was not paid on a regular monthly basis to Gardner Heights. Therefore, that money can only be exempted in the amount of receipt. Once the money remained in the CT Page 11376 account for over a month, it became a countable asset."
The hearing officer found as a fact that:
 8. The appellant's remaining assets [after the $3,600+ burial account had been closed] (People's accounts No. 001-0167615, 001-5167615 and 01-0274673-01) were in excess of the asset limit until June 1992.
 9. The appellant was not eligible for the Title XIX assistance until June 1, 1992 as his countable assets exceeded the agency limit of $1,600.00.
Savings account statements in the record for the conservatrix's savings account number 001-5167615 show the following balances at month's end: February 29 — $13.51; March 31 — $396.57; April 30 — $14.95; May 31 — $383.04.
The hearing officer's findings showed a savings balance of $396.95 in April rather than the $14.95 balance actually on hand. That factual finding was in error. However, even counting the lesser amount, total assets exceeded the $1,600.00 threshold.
The checking account number 001-0167615 showed balances in excess of $100 for the months of April, May and June.
As of March 31, 1992, April 30, 1992, May 31, 1992, the only evidence is that there was $1,500.00 in account No. 01-0274763-01. There was substantial evidence before the hearing officer to sustain his findings that the applicant was over asset limit until June 1, 1992 and thus ineligible for Title XIX benefits. In April, the countable assets exceeded the $1,600.00 threshold by only $24.65. However, not until June, 1992 did the countable assets go below the threshold. The fact that any of these accounts might have been used by the conservatrix to pay her proper fees or surety bond expense is not controlling. They were not so used and thus were properly determined to be countable assets.
 III
The plaintiff claims the doctrine of estoppel should CT Page 11377 apply against the State. After talking with an unnamed State Department of Human Resources worker, the conservatrix opened a $3,600.00 burial account and a $1,600.00 personal needs account for the ward. A Mrs. Presnick from the department advised the conservatrix several months later that she could not have a burial account in the bank, and still exclude the amount from countable assets. To qualify, the account had to be set up with an undertaker in an irrevocable account.
Section 17-3f of the General Statutes requires that the Department of Income Maintenance prepare and periodically update state medical service manuals. It further mandates that the manuals shall be published by the department and made available in agency offices, each town hall, each legal assistance office and to any member of the public who requests a copy. It does not require them to be published in the manner required of other state agencies and does not mandate their publication in the volumes of the Regulations of State Agencies.
In the case of Kimberly-Clark Corporation v. Dubno,204 Conn. 137, 148, the Supreme Court stated:
 `Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. Bozzi v. Bozzi, 177 Conn. 232, 242, 413 A.2d 834 (1979); Dupuis v. Submarine Base Credit Union, Inc., [supra]; Pet Car Products, Inc. v. Barnett, 150 Conn. 42, 53-54, 184 A.2d 797 (1962).' Zoning Commission v. Lescynski, supra. In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. Id.; Dupuis v. Submarine Base Credit Union, Inc., supra, 354. As noted, this exception applies where the party claiming estoppel CT Page 11378 would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents. `[I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.' Pet Car Products, Inc. v. Barnett, [supra]; Linahan v. Linahan, 131 Conn. 307, 327, 39 A.2d 895 [1944].' Reinke v. Greenwich Hospital Assn., 175 Conn. 24, 28-29, 392 A.2d 966 (1978).
There is evidence in the record that the $3,600.00 burial account was set up originally on the advice of another unknown representative of the Department of Income Maintenance who had been contacted by the . . . .conservatrix well before the initial application was made. Under the Kimberly-Clark case, the agent inducing the action must "have authority in such matters." Since there is no evidence that the person who did render the advice had authority to make the representations about what was necessary to exclude the $3,600.00 burial account or the personal needs account from countable assets, estoppel cannot be invoked under our case law to bar strict enforcement of the regulation by the agency. Kimberly-Clark, supra.
 IV
The court has come to its decision reluctantly and only because the regulations and statutes and case law require this result.
It is hoped that the court will be pardoned the comment that one of the cardinal principles of any rule of law, is that the people should know to what law they are subject. State v. South Norwalk, 77 Conn. 257, 261. A system whereby welfare regulations are not published and disseminated, as are those of other state agencies, does little to serve that important principle. Although section 17-3f of the statutes legalizes the current system whereby no general publication of medicaid regulations is made in the volumes of the Regulations of State Agencies, the practical effect of this system, where these important regulations repose in offices of the State Department of Human Services, or legal aid offices, or offices of town clerks, is to leave the bulk of the bench, bar and the CT Page 11379 general public in ignorance and reliant to a great extent on oral information received from employees of the agency. Section 17-3f of the Statutes should be reviewed by the General Assembly. People have to be able to know what the laws are in order to conform their conduct and affairs to their requirements. "It is of the first importance that the people should know to what law they are subject." Caldwell v. Meskill, 164 Conn. 299; State v. South Norwalk, supra, 261. The people cannot easily ascertain that information where it is not readily available in law libraries or in the official codification of the regulations of all other state agencies published by the official State Commission on Official Legal Publications. Nor is the information or advice obtained from members of the bureaucracy always accurate. This problem calls out for a legislative remedy. However, based on the record and present state of the law, the appeal of the plaintiff must be and is dismissed.
Flynn, J.