## ANNE P. DICKAU ET AL. *v.* TOWN OF GLASTONBURY

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued April 4—decided May 7, 1968

*Robert W. Gordon,* for the appellants (plaintiffs).

*Edward C. Wynne,* for the appellee (defendant).

ALCORN, J. The plaintiffs have appealed from the valuation placed upon certain of their real estate for tax purposes in Glastonbury. Their original complaint was in two counts. The first count was in the form of an appeal from the action of the board of tax review in refusing to reduce the allegedly excessive valuation placed by the assessors on five described parcels of land. The second count alleged that the plaintiffs had applied, under General Statutes (Rev. to 1964) § 12-107c, to have these parcels classified as farmland; that the assessors made no such classification but stated that the assessment as previously made would not be changed; and that the classification of the land "as industrial land and commercial land as hereinbefore stated" was improper and illegal. There was, however, no allegation that the land had been classified as industrial or commercial land, but it was alleged that the board of tax review, on an appeal to it for a classification of the property as farmland, had refused to make any change. The relief sought on the two counts was (1) that the plaintiffs' land be classified as farmland and (2) that the valuation of the land be reduced to its "true and actual value."

A third count was later added to the complaint, alleging, in substance, that the plaintiffs had gone to the assessor's office for the purpose of seeking the benefits of General Statutes (Rev. to 1964) § 12-107c and that the assessor had told them that there was no need to seek such relief because the existing assessment would not be altered; that the

plaintiffs had consequently not applied for the benefits available under § 12-107c, but the assessor nevertheless did subsequently alter the assessments; that the plaintiffs appealed from that action to the board of tax review without success; and that "the classification of the plaintiffs' land by the assessor as industrial land and commercial land as hereinbefore stated was improper and illegal." Again there was no allegation that the land was classified as industrial and commercial land. The relief sought was that the land be assessed as farmland under § 12-107c.

The defendant admitted none of the allegations of any of the counts except the plaintiffs' ownership of the five parcels of land involved.

The court was thus presented, in substance, with an appeal, as authorized by General Statutes (Rev. to 1964) § 12-118, from the valuation placed upon the plaintiffs' land, an appeal from a claimed refusal to grant an application to classify the land as farmland under § 12-107c, and an appeal from a claimed action of the assessor in dissuading the plaintiffs from seeking relief under § 12-107c. After a hearing on all of the disputed issues, the court concluded that the plaintiffs had not sustained their burden of proof and that the true and actual value of the land was that set by the assessor and the board of tax review. Judgment was rendered confirming the action of the board of tax review, and the plaintiffs have appealed from the judgment.

There are eleven assignments of error. One of them seeks the addition of 102 paragraphs to the finding, of which fifty-six were expressly abandoned at the time of argument. The remaining forty-six are not pursued in the brief and must be treated as abandoned. *Shelton Yacht & Cabana Club, Inc.* v.

*Suto,* 150 Conn. 251, 254, 188 A.2d 493. The same treatment, for the same reason, is accorded three assignments of error attacking the facts found and the conclusions reached by the court and four assignments of error in rulings on evidence. No correction of the finding is required.

The plaintiffs' contention on this appeal reduces to two propositions, based, in substance, on the first and third counts of the complaint. They are, first, that the tax assessor was not justified in revaluing the plaintiffs' land from $200 per acre as agricultural land to $1000 per acre merely because the land had been rezoned as industrial land; and, second, that the town was estopped from altering the preexisting valuation by the action of the assessor in dissuading the plaintiffs from applying for the benefits afforded by General Statutes (Rev. to 1964) § 12-107c. The claim under the second count is not pursued because the plaintiffs admittedly never sought relief under § 12-107c.

We have recently discussed General Statutes §§ 12-107a—12-107c, passed by the 1963 General Assembly and designed to provide preferential tax treatment of farmland. *Marshall* v. *Newington,* 156 Conn. 107, 239 A.2d 478. As we pointed out in that case, when an owner has applied for the classification of land as farmland, as defined in § 12-107b, it is the duty of the assessor to determine whether the land qualifies for such classification under the tests laid down in § 12-107c (a). Land so classified is then to be valued "based upon its current use without regard to neighborhood land use of a more intensive nature," but the true and actual value of all other property is to be deemed the fair market value. General Statutes (Rev. to 1964) § 12-63. Admittedly the plaintiffs did not

apply for a classification of their land as farmland, and consequently, unless their claim of estoppel is valid, their land is to be valued at its present true and actual valuation. General Statutes (Rev. to 1964) § 12-64. The determination of that valuation presents a question of fact for the trier, with the burden on the plaintiffs to prove that the assessor's valuation was not the present true and actual value or, in other words, the present fair market value of the property. *Sheldon House Club, Inc.* v. *Branford,* 149 Conn. 28, 32, 175 A.2d 186; *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 680, 154 A.2d 608.

The plaintiffs' claim of estoppel is without merit for several reasons. In the first place, "[e]stoppel rests upon the misleading conduct of one party to the prejudice of the other." *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 548, 173 A. 783; *Linahan* v. *Linahan,* 131 Conn. 307, 327, 39 A.2d 895. Its two essential elements are: one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief; and the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done. *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53, 184 A.2d 797. The court found that the assessor did not state that he was not going to increase the assessment on the plaintiffs' land, that he had no intent to mislead, deceive, or misrepresent, and that he did not counsel, suggest or advise the plaintiffs not to file an application under General Statutes (Rev. to 1964) § 12-107c. The court further found that the plaintiffs did not decide not to file an application under § 12-107c at the time of their conference with the assessor but came to that

decision later on advice of their own independent advisor. Consequently, the facts as found by the court would not give rise to an estoppel.

Furthermore, a municipality cannot be estopped by the unauthorized acts of its officers. *Hebb* v. *Zoning Board of Appeals,* 150 Conn. 539, 542, 192 A.2d 206; *Pet Car Products, Inc.* v. *Barnett,* supra. And finally, "equitable estoppel is available only for protection and cannot be used as a weapon of assault." *Hebb* v. *Zoning Board of Appeals,* supra, 543.

In addition to the facts already related, the court found the following: For some twenty years prior to 1963, the plaintiff Anne P. Dickau and her now deceased husband, Edward F. Dickau, Sr., whose estate is represented in this action by his executors, had owned about ninety acres of land on the west side of Main Street and about fourteen and one-half acres on the east side of Main Street in Glastonbury. Tobacco had been grown annually on the ninety acres. Edward F. Dickau, Sr., died on March 27, 1963, and, after his death, the five parcels of the land which are the subject of this appeal, totaling 41.3 acres, were leased for the growing of tobacco and field corn. Four of the parcels were in an industrial zone, and one was in a business zone. In September, 1964, Mrs. Dickau, accompanied by a farm bureau representative, talked with the Glastonbury assessor regarding the feasibility of seeking the benefits of General Statutes (Rev. to 1964) § 12-107c for the portion of the land used for farming purposes. A schedule of land values covering various classifications of Glastonbury land existed at the time, in which industrial land had been valued at $1000 to $1200 per acre on the October, 1963, assessment list. The assessor said that

the use values of farmland under § 12-107c would, in many cases, be higher on the October, 1964, list than those in the existing schedule of the various land classifications and that he expected to make no change in the existing schedule. The plaintiffs made no application to have their land classified as farmland under § 12-107c. Under the existing schedule and the zoning classification, their land would be valued at $1000 per acre. On the 1963 assessment list, however, one of the plaintiffs' parcels was valued at $100 per acre and each of the other four parcels was valued at $200 per acre. On October 1, 1964, one of the five parcels in issue was assessed at $1000 per acre instead of $100 per acre as it had been valued on the 1963 assessment list, and the other four parcels were each valued at $1000 per acre instead of $200 per acre as on the 1963 list. The plaintiffs appealed to the board of tax review, which refused to change the assessments thus made. In making the assessments appealed from, the assessor considered many factors, including the availability of utilities, the location of the parcels, the road network, the zoning classification, the value of surrounding land, and the flat topography of the parcels. The plaintiffs' appraiser placed a value of $600 per acre, solely for agricultural purposes, on four of the parcels and a value of $900 on 1.5 acres of the fifth parcel. He did not consider the potentiality of any of the land for industrial use although he agreed that he knew of no land in Glastonbury better suited to industrial use. Another appraiser, who considered the industrial use potential of the land, valued it at a minimum of $2000 per acre with portions of it at a higher figure.

It is unnecessary to relate other facts found by the court. A map in evidence demonstrates that

four of the parcels form a tract lying between Main Street on the east and Naubuc Avenue on the west, close to a major highway intersection and near the approach to the Putnam Bridge crossing the Connecticut River. The fifth parcel lies at the southeast corner of Main and Spring Streets near the center of the town. The plaintiffs' claim that the assessor made the change in value subsequent to a rezoning of the land to an industrial use is incomprehensible in view of the fact that not only is there no finding to that effect but the only zoning map in evidence shows the zoning restriction to have been in effect on June 25, 1956, some eight years before.

From the evidence before it, including the desirability of the property for industrial use and the fact that it was zoned for such use, it was the function of the court to ascertain the present true and actual value of the property. *Marshall* v. *Newington,* 156 Conn. 107, 113, 239 A.2d 478; *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 673, 154 A.2d 608. On the facts found, the court correctly concluded that the plaintiffs did not attempt to comply with General Statutes (Rev. to 1964) § 12-107c so as to permit the land to be classified as farmland, that there was no estoppel, and that the land was not inequitably, disproportionately or unlawfully valued.

There is no error.

In this opinion the other judges concurred.