JAMES MERCANTI *v.* SETH PERSSON

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued February 5—decided March 2, 1971

*James D. Reardon,* for the appellant (defendant).

*Hyman Wilensky,* for the appellee (plaintiff).

ALCORN, C. J. The complaint in this action alleged, in substance, that the defendant, who was a boat builder, agreed to build and deliver to the plaintiff a mast for the latter's yacht; that the plaintiff agreed to and did furnish materials and hardware worth about $1300 to be affixed to the mast; that he agreed to pay, and actually paid, $4558 to the defendant for the labor involved at the rate of $4 an hour; and that the defendant has failed to deliver the mast and the materials furnished to him for installation in the plaintiff's yacht. All of these

allegations were admitted by the defendant. The complaint also alleged that the defendant knew that the plaintiff was engaged in the business of chartering his yacht for fishing and boating parties and that the defendant agreed to have the mast completed so that the plaintiff could use the yacht for the 1964 fishing season and as a result of his failure to do so, the plaintiff was damaged to the extent of $6500 for the loss of use of his yacht and for having to cancel bookings. These were the only allegations of the complaint which the defendant denied. As a special defense the defendant pleaded that the mast was totally destroyed by fire and that he had not insured it against loss by fire because the plaintiff had agreed to have it insured against such loss as is the custom. In a second special defense the defendant pleaded that he had completed construction of the mast except for affixing the "hardware" which was to be furnished by the plaintiff and that the plaintiff's delay in delivering the hardware prevented the defendant from completing and delivering the mast prior to its destruction by fire. By stipulation of the parties, the case was referred to a state referee who, sitting as a court, rendered judgment for the plaintiff. The defendant has appealed from the judgment, assigning as error findings and conclusions of fact reached by the referee, a ruling on evidence, the ultimate conclusion that the risk of loss rested on the defendant under the conclusions disclosed, and that partial relief was improperly granted on the theory of bailment.

No corrections can be made in the referee's finding which would be of advantage to the defendant. The finding discloses the following facts. The plaintiff was an experienced yachtsman and marine engineer who owned a yacht which, on July 4, 1963, had lost

a mast in a squall. The defendant was a boat and spar builder. About July 26, 1963, the parties orally agreed that the defendant would construct a ninety-two foot mast for the plaintiff and the plaintiff thereupon paid the defendant $1000 with which to purchase the necessary lumber. In addition, the plaintiff agreed to furnish the hardware which was to be affixed to the mast. It was agreed that the plaintiff would pay the defendant, as billed, at the rate of $4 an hour for the labor involved. The defendant had substantially completed the woodwork on the mast by December, 1963, but he could not finish the work until the hardware which was to be affixed to the mast was delivered to him by the plaintiff. The plaintiff did not deliver the hardware until June 15, 1964, at which time he delivered hardware worth $1200. On June 17, 1964, the defendant's boat yard and its contents, including the mast and the hardware which had been delivered on June 15, were totally destroyed by fire. No evidence was offered as to the origin and cause of the fire or of any precautions taken by the defendant to prevent the loss. Because of the fire, the defendant was unable to do any further work on the mast or to deliver it or the hardware supplied for it to the plaintiff. Prior to the date of the fire, the plaintiff had paid the defendant $4588 for labor and materials in building the mast.

The referee concluded that the risk of loss of the mast and the hardware furnished for it was on the defendant; that the delivery of the hardware on June 15 was a bailment of goods worth $1200 and he rendered judgment for the plaintiff to recover that amount plus $4558 which the plaintiff had previously paid on account of labor and materials. The payment of $4558 was admitted in the plead-

ings and found to be due in the memorandum of decision rather than $4588 as appears in the finding. The referee found that the delay in completing the mast was caused by the plaintiff's failure to deliver the hardware to be installed on it until June 15, 1964. No time was specified in the agreement between the parties as found by the referee, however, as to when the plaintiff would supply the necessary hardware.

Since the referee has not found that there was any breach of the agreement between the parties, the risk of loss would be determined by § 42a-2-509 of the General Statutes, printed in the footnote.[1] Subsection (1) of that statute is not applicable to the present case because no shipment by carrier was contemplated. Subsection (2) is inapplicable because, under the facts found, the mast was not held

---

[1] "Sec. 42a-2-509. RISK OF LOSS IN THE ABSENCE OF BREACH.

"(1) Where the contract requires or authorizes the seller to ship the goods by carrier (a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier even though the shipment is under reservation, as provided in section 42a-2-505; but (b) if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery.

"(2) Where the goods are held by a bailee to be delivered without being moved, the risk of loss passes to the buyer (a) on his receipt of a negotiable document of title covering the goods; or (b) on acknowledgment by the bailee of the buyer's right to possession of the goods; or (c) after his receipt of a non-negotiable document of title or other written direction to deliver, as provided in subsection (4) (b) of section 42a-2-503.

"(3) In any case not within subsection (1) or (2), the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery.

"(4) The provisions of this section are subject to contrary agreement of the parties and to the provisions of section 42a-2-327 on sale on approval and section 42a-2-510 on effect of breach on risk of loss."

by the defendant as bailee to be delivered without being moved. Subsection (3) of the statute, however, provides that in any case not within subsections (1) or (2) "the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant; otherwise the risk passes to the buyer on tender of delivery." The word "merchant", as used in the statute, is defined in § 42a-2-104 as follows: " 'Merchant' means a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction". The defendant meets this description. The finding, of course, discloses no receipt of the goods by the plaintiff and no tender of delivery by the defendant. Consequently, under the terms of § 42a-2-509 (3), the risk of loss would be on the defendant.

The defendant contends that he is saved from the operation of subsection (3) of § 42a-2-509 by subsection (4) of § 42a-2-509 which provides that the provisions of the section "are subject . . . to the provisions of . . . section 42a-2-510 on effect of breach on risk of loss." Subsection (3) of § 42a-2-510 provides: "Where the buyer as to conforming goods already identified to the contract for sale repudiates or is otherwise in breach before risk of their loss has passed to him, the seller may to the extent of any deficiency in his effective insurance coverage treat the risk of loss as resting on the buyer for a commercially reasonable time." The defendant relies on the plaintiff's delay in furnishing the hardware for the mast as the basis for claiming a breach by the plaintiff of the agreement between the parties sufficient to make subsection (3) of § 42a-2-510 applicable. The claim fails, however, because there is no finding that any date for the delivery of the hard-

ware for the mast was included in the agreement between the parties. Consequently, the plaintiff's delay in making delivery could not be found to be a breach of the agreement.

The defendant also claims that he is saved from the operation of subsection (3) of § 42a-2-509 by the provision in subsection (4) of § 42a-2-509 that the provisions of the section "are subject to contrary agreement of the parties". The defendant claims, first of all, that there was a specific additional agreement that the risk of loss would be on the plaintiff. In support of this claim, he relies on conversations which he and his wife had with the plaintiff regarding the insurance coverage carried by the plaintiff. On this subject, the referee found that the plaintiff and the defendant had conversations from time to time concerning casualty loss insurance on the mast under construction, and that, when questioned by the defendant as to whether the plaintiff had insurance coverage, the plaintiff twice stated that "he would check it out." The referee also found that on one occasion before the fire, the plaintiff, when asked if he carried insurance which would cover the mast under construction, replied that he did have such coverage. These findings do not amount to an agreement between the parties that the plaintiff would assume the responsibility for having the work in progress insured.

The defendant also claims that there was a custom and usage of the trade for the boat owner to insure against loss and that this became, in effect, a part of the agreement between the parties. Subsection (2) of § 42a-1-205 provides that "[a] usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed

with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts." Subsection (3) of that statute provides that "[a] course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement." Subsection (5) provides that "[a]n applicable usage of trade in the place where any part of performance is to occur shall be used in interpreting the agreement as to that part of the performance." Subsection (3) of § 42a-1-201 defines "agreement" as meaning "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in sections 42a-1-205 and 42a-2-208." Subsection (2) of § 42a-2-208 provides, in material part, that the express terms of the agreement "and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other."

It is clear that if it was the custom or usage of the boat building trade for the boat owner to assume the responsibility for insuring work in progress against risk of loss by fire, the risk of loss would be on the plaintiff in the absence of any inconsistent terms of the agreement, and there are none in the present case. There is, however, no finding as to any custom or usage in the boat building trade of the sort claimed. Consequently, the agreement cannot be construed in the light of a custom or usage which has not been found to exist.

The absence of such a finding, however, brings us to the defendant's assignment of error as to a ruling

on evidence by the referee. The defendant produced an expert witness who, on direct examination, testified that he had been a marine surveyor since 1939 doing much of his work for insurance companies as a consultant to determine the cause, extent and value of marine losses. On direct examination, he was asked: "As a marine surveyor, from your experience, do yard owners insure work in progress for specific boats?" Counsel for the plaintiff objected, the referee sustained the objection, and an exception to the ruling was noted. We have repeatedly called attention to the necessity of observing the requirements of § 226 of the Practice Book in presenting a ruling on evidence for review on appeal. The background and purpose of the rule was discussed fully in *Casalo* v. *Claro,* 147 Conn. 625, 628–30, 165 A.2d 153. In the present case, no ground for the objection was stated, no ground for the admissibility of the question was stated by the questioner, and no basis for the referee's ruling was stated. Consequently, nothing is presented for us to review on this appeal and the ruling of the referee cannot be held to be reversible error. *Krattenstein* v. *G. Fox & Co.,* 155 Conn. 609, 612, 236 A.2d 466; *Megin* v. *Carney,* 148 Conn. 130, 134, 167 A.2d 855. Beyond that, the record contains no offer of proof to enlighten us as to whether the defendant was deprived of the opportunity to offer substantial proof of a significant custom or usage pertinent to the transaction. Since the finding embraces no other facts bearing on the subject of custom and usage, we are unable to treat that subject as having any bearing on the agreement between the parties.

It is clear from the foregoing that the defendant is not saved from the operation of § 42a-2-509 (3) which would place the risk of loss of the mast on

the defendant either on the ground that the plaintiff had breached the agreement between the parties or on the ground that the agreement specifically placed the risk of loss on the plaintiff. The defendant, however, also claims that the conclusions reached by the referee place the risk of loss on the plaintiff as a matter of law. This claim is based on the referee's conclusion that "[t]he plaintiff by word and action misled the defendant into the belief that plaintiff had insurance coverage which would be a protection to both parties against loss of the mast, in reliance on which defendant provided no insurance to cover his risk of loss." The correctness of that finding is not attacked. We are of the opinion that the defendant is correct in claiming that this conclusion is inconsistent with a judgment for the plaintiff. This is so because that conclusion, taken together with several subordinate findings of fact, establishes that the defendant was entitled to the protection of the doctrine of equitable estoppel.

The two essential elements of estoppel are that "one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief; and the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done." *Dickau* v. *Glastonbury,* 156 Conn. 437, 441, 242 A.2d 777; *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53, 184 A.2d 797. The referee's conclusion that the plaintiff by word and action misled the defendant into the belief that the plaintiff had insurance coverage which would be a protection to both parties against loss of the mast, in reliance on which the defendant provided no insurance to cover his risk of loss, can mean only that the referee was satisfied

that the two essential elements of estoppel were present in this case. Estoppel was not specifically pleaded but the defendant's first special defense encompassed the essential elements of an estoppel. A defense of estoppel, however, need not be pleaded. *Stern & Co.* v. *International Harvester Co.,* 148 Conn. 527, 534, 172 A.2d 614. In order to benefit from the defense, a party must prove the essential elements for the application of the defense and must also "show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." *Pet Car Products, Inc.* v. *Barnett,* supra, 54. The referee found that the plaintiff and the defendant from time to time had several conversations concerning casualty loss insurance on the mast under construction; that the defendant had insurance only on the buildings in his yard; that on two occasions when the defendant questioned the plaintiff as to whether he had insurance coverage the "plaintiff stated he would check it out"; and that on one occasion, prior to the fire, when the plaintiff was asked if he had coverage, he replied that he had coverage. The plaintiff was the obvious source from which the defendant could expect to get the information which he sought. The findings concerning the efforts which the defendant made to satisfy himself on an element of the transaction which he clearly considered important establish that he diligently attempted to ascertain whether the plaintiff had insurance coverage. Eventually, the plaintiff satisfied him that the plaintiff carried the necessary coverage and the referee has found that the defendant relied on that assurance.

Estoppel is a valid defense to the present action

notwithstanding the provisions of § 42a-2-509. Section 42a-1-103 specifically states: "Unless displaced by the particular provisions of this title, the principles of law and equity, including . . . the law relative to . . . estoppel, . . . or other validating or invalidating cause shall supplement its provisions." The provisions of § 42a-2-509 do not in any way preclude the application of the doctrine of equitable estoppel. Consequently, the plaintiff, in equity, should be bound by his representation to the defendant that he had insurance coverage that would protect both of them from the risk of loss arising from the destruction of the mast. To absolve the plaintiff from the consequences of what the referee has specifically found to be misleading conduct would be contrary to the dictates of equity and justice. On the facts found and the conclusions based thereon, the plaintiff must be held to be estopped from claiming that the risk of loss under § 42a-2-509 fell on the defendant.

In view of this conclusion, it is unnecessary to discuss the issue whether the delivery of the hardware constituted a bailment. The mast which the plaintiff led the defendant to believe was adequately covered by insurance carried by the plaintiff was "the mast under construction." This clearly meant the mast at all stages of construction including the affixing of the hardware furnished by the plaintiff.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.