MULTIPLASTICS, INC. *v.* ARCH INDUSTRIES, INC.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued February 7—decision released April 16, 1974

*John F. Harvey, Jr.,* for the appellant (defendant).

*Mitchel W. Garber,* with whom was *Peter A. Treffers,* for the appellee (plaintiff).

BOGDANSKI, J. The plaintiff, Multiplastics, Inc., brought this action to recover damages from the defendant, Arch Industries, Inc., for the breach of a contract to purchase 40,000 pounds of plastic pellets. From a judgment rendered for the plaintiff, the defendant has appealed to this court.

The facts may be summarized as follows:[1] The plaintiff, a manufacturer of plastic resin pellets, agreed with the defendant on June 30, 1971, to manufacture and deliver 40,000 pounds of brown polystyrene plastic pellets for nineteen cents a pound. The pellets were specially made for the defendant, which agreed to accept delivery at the rate of 1000 pounds per day after completion of production. The defendant's confirming order contained the notation "make and hold for release. Confirmation." The plaintiff produced the order of pellets within two weeks and requested release orders from the defendant. The defendant refused to issue the release orders, citing labor difficulties and its vacation schedule. On August 18, 1971, the plaintiff sent the defendant the following letter: "Against P. O. 0946, we produced 40,000 lbs. of brown high impact

---

[1] The defendant has assigned error in the trial court's refusal to find facts set forth in ten paragraphs of the draft finding. None of the paragraphs which the defendant has briefed can be added to the finding, because they are either immaterial or not admitted or undisputed. Practice Book § 628 (a); *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 184, 286 A.2d 299; *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274. The defendant has also challenged five findings of fact as being unsupported by evidence. Three of those findings are actually conclusions and are discussed in the body of this opinion. The defendant has not briefed its challenge to one of the findings. That challenge is treated as abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246; Maltbie, Conn. App. Proc. § 327. The evidence printed in the appendix to the plaintiff's brief reasonably supports the remaining finding, which must, therefore, stand. *Curtin* v. *Franchetti,* 156 Conn. 387, 390, 242 A.2d 725.

styrene, and you have issued no releases. You indicated to us that you would be using 1,000 lbs. of each per day. We have warehoused these products for more than forty days, as we agreed to do. However, we cannot warehouse these products indefinitely, and request that you send us shipping instructions. We have done everything we agreed to do." After August 18, 1971, the plaintiff made numerous telephone calls to the defendant to seek payment and delivery instructions. In response, beginning August 20, 1971, the defendant agreed to issue release orders but in fact never did.

On September 22, 1971, the plaintiff's plant, containing the pellets manufactured for the defendant, was destroyed by fire. The plaintiff's fire insurance did not cover the loss of the pellets. The plaintiff brought this action against the defendant to recover the contract price.

The trial court concluded that the plaintiff made a valid tender of delivery by its letter of August 18, 1971, and by its subsequent requests for delivery instructions; that the defendant repudiated and breached the contract by refusing to accept delivery on August 20, 1971; that the period from August 20, 1971, to September 22, 1971, was not a commercially unreasonable time for the plaintiff to treat the risk of loss as resting on the defendant under General Statutes § 42a-2-510 (3); and that the plaintiff was entitled to recover the contract price plus interest.

General Statutes § 42a-2-510, entitled "Effect of breach on risk of loss," reads, in pertinent part, as follows: "(3) Where the buyer as to conforming goods already identified to the contract for sale repudiates or is otherwise in breach before risk of

their loss has passed to him, the seller may to the extent of any deficiency in his effective insurance coverage treat the risk of loss as resting on the buyer for a commercially reasonable time."[2]   The defendant contends that § 42a-2-510 is not applicable because its failure to issue delivery instructions did not constitute either a repudiation or a breach of the agreement.  The defendant also argues that even if § 42a-2-510 were applicable, the period from August 20, 1971, to September 22, 1971, was not a commercially reasonable period of time within which to treat the risk of loss as resting on the buyer.  The defendant does not claim that the destroyed pellets were not "conforming goods already identified to the contract for sale," as required by General Statutes § 42a-2-510 (3), nor does it protest the computation of damages.  With regard to recovery of the price of goods and incidental damages, see General Statutes § 42a-2-709 (1) (a).

The trial court's conclusion that the defendant was in breach is supported by its finding that the defendant agreed to accept delivery of the pellets at the rate of 1000 pounds per day after completion of production.  The defendant argues that since the confirming order instructed the plaintiff to "make and hold for release," the contract did not specify an exact delivery date.  This argument fails, however, because nothing in the finding suggests that the notation in the confirming order was part of the agreement between the parties.  Since, as the trial court found, the plaintiff made a proper tender of delivery, beginning with its letter of August 18,

[2] Risk of loss in the absence of breach passes, under the contract involved in this case, to the buyer upon his receipt of the goods if the seller is a merchant.  General Statutes § 42a-2-509 (3).

1971,[3] the plaintiff was entitled to acceptance of the goods and to payment according to the contract. General Statutes §§ 42a-2-507 (1), 42a-2-307.

The defendant argues that its failure to issue delivery instructions did not suffice to repudiate the contract because repudiation of an executory promise requires, first, an absolute and unequivocal renunciation by the promisor, and, second, an unambiguous acceptance of the repudiation by the promisee. *Yaffe* v. *Glens Falls Indemnity Co.,* 115 Conn. 375, 378, 161 A. 521; *Wells* v. *Hartford Manilla Co.,* 76 Conn. 27, 35, 55 A. 599. Anticipatory repudiation is now governed by General Statutes §§ 42a-2-609 to 42a-2-611, which in some respects alter the prior law on the subject. The present case does not involve repudiation of an executory promise, however, since the defendant breached the contract by failing to accept the goods when acceptance became due.

The defendant next claims that the plaintiff acquiesced in the defendant's refusal to accept delivery by continuing to urge compliance with the contract and by failing to pursue any of the remedies provided aggrieved sellers by General Statutes § 42a-2-703. In essence, the defendant's argument rests on the doctrines of waiver and estoppel, which are available defenses under the Uniform Commercial Code. General Statutes §§ 42a-1-103, 42a-1-107, 42a-2-209; *Mercanti* v. *Persson,* 160 Conn. 468, 477–79, 280 A.2d 137; see 1 Anderson, Uniform Commercial Code (2d Ed.) §§ 1-103:31, 1-103:51. The defendant has not, however, shown those defenses

---

[3] The finding fails to disclose why the plaintiff's earlier requests for release orders did not constitute valid tenders of delivery. The defendant does not claim, at any rate, that the plaintiff made a proper tender of delivery prior to August 18, 1971.

to apply. Waiver is the intentional relinquishment of a known right. *Brauer* v. *Freccia,* 159 Conn. 289, 295, 268 A.2d 645. Its existence is a question of fact for the trier. *Brauer* v. *Freccia,* supra. The trial court did not find that the plaintiff intentionally acquiesced in the defendant's breach of their agreement, thereby waiving its right to take advantage of that breach. Indeed, the plaintiff's repeated attempts to secure compliance seem inconsistent with the possibility of waiver. See *Bradford Novelty Co.* v. *Technomatic, Inc.,* 142 Conn. 166, 112 A.2d 214, for an example of acquiescence in delayed performance.

Nor has the defendant made out a case of estoppel. "The two essential elements of estoppel are that 'one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief; and the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done.' *Dickau* v. *Glastonbury,* 156 Conn. 437, 441, 242 A.2d 777; *Pet Car Products, Inc.* v. *Barnett,* 150 Conn. 42, 53, 184 A.2d 797." *Mercanti* v. *Persson,* supra, 477. Neither element of estoppel is present in the record of this case. The plaintiff's requests for delivery instructions cannot be said to have misled the defendant into thinking that the plaintiff did not consider their contract breached. In fact, General Statutes § 42a-2-610, entitled "Anticipatory repudiation," specifically provides that the aggrieved seller may "resort to any remedy for breach as provided by section 42a-2-703 . . . , even though he has notified the repudiating party that he would await the latter's performance and has urged retraction." Although the present case is not governed by Gen-

eral Statutes § 42a-2-610, that section does demonstrate that the plaintiff's conduct after the defendant refused to accept delivery was not inconsistent with its claim that the contract was breached.[4]

The remaining question is whether, under General Statutes § 42a-2-510 (3), the period of time from August 20, 1971, the date of the breach, to September 22, 1971, the date of the fire, was a "commercially reasonable" period within which to treat the risk of loss as resting on the buyer. The trial court concluded that it was "not, on the facts in this case, a commercially unreasonable time," which we take to mean that it was a commercially reasonable period. The time limitation in § 42a-2-510 (3) is designed to enable the seller to obtain the additional requisite insurance coverage. 2 Anderson, op. cit. § 2-510:6. The trial court's conclusion is tested by the finding. *F. & AK, Inc.* v. *Sleeper,* 161 Conn. 505, 510, 289 A.2d 905. Although the finding is not detailed, it supports the conclusion that August 20 to September 22 was a commercially reasonable period within which to place the risk of loss on the defendant. As already stated, the trial court found that the defendant repeatedly agreed to transmit delivery instructions and that the pellets were specially made to fill the defendant's order. Under those circumstances, it was reasonable for the plaintiff to believe that the goods would soon be taken off its hands and so to forgo procuring the needed insurance.

---

[4] The proposition that if the promisee urges the repudiating party to retract his renunciation of the contract, the promisee cannot sue for a breach, for which the defendant cites *Wells* v. *Hartford Manilla Co.,* 76 Conn. 27, 34, 55 A. 599, is no longer a correct statement of the law. For a critical commentary on the former law, see 4 Corbin, Contracts § 981.

We consider it advisable to discuss one additional matter. The trial court concluded that "title" passed to the defendant, and the defendant attacks the conclusion on this appeal. The issue is immaterial to this case. General Statutes § 42a-2-401 states: "Each provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title." As one student of the Uniform Commercial Code has written: "The single most important innovation of Article 2 [of the Uniform Commercial Code] is its restatement of . . . [the parties'] responsibilities in terms of operative facts rather than legal conclusions; where pre-Code law looked to 'title' for the definition of rights and remedies, the Code looks to demonstrable realities such as custody, control and professional expertise. This shift in approach is central to the whole philosophy of Article 2. It means that disputes, as they arise, can focus, as does all of the modern law of contracts, upon actual provable circumstances, rather than upon a metaphysical concept of elastic and endlessly fluid dimensions." Peters, "Remedies for Breach of Contracts Relating to the Sale of Goods under the Uniform Commercial Code: A Roadmap for Article Two," 73 Yale L.J. 199, 201.

There is no error.

In this opinion the other judges concurred.