[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal under Section 12-117a (formerly 12-118) of the General Statutes (Rev. to 1993) from the action of the Defendant Town of Salisbury Board of Tax Review valuing for assessment purposes a parcel of real estate owned by the Plaintiff in connection with the Town's decennial revaluation effective with the list of October 1, 1990. By amendment, this appeal includes the lists of October 1, 1990-1992 inclusive. The Second Count of the amended appeal complaint was orally withdrawn at the inception of trial.
The issue presented concerns the proper method of valuation for assessment purposes of land whose development rights have been conveyed to the State pursuant to Chapter 422a of the General Statutes, Sec. 22-26aa
et seq. This appears to be a case of first impression.
The subject parcel consists of 117.1871 acres of unimproved land. A substantial portion is cleared land and the remainder woodland. The parcel is irregular in shape and has gently sloping topography with view amenities. It is bisected by a high tension power line situated within a 150 foot wide easement. A portion is utilized by a tenant farmer for the growing of crops.
The parcel is one of three contiguous resubdivided lots owned by Plaintiff, the other two lots consisting of 18.5277 acres and 14.8027 acres respectively. The land is situated in a RR 1 Rural Residential zone requiring a minimum 80,000 square foot building lot. This zone permits agricultural uses. Although the parcel has 1,393 feet of frontage on the north side of Route 112, access is limited. Plaintiff's principal testified that it would cost $150,000 to construct a road over the otherwise impassable right of way therefor. The present means of access used by the tenant farmer is legally questionable.
By deed recorded on February 28, 1986 (Ptf. Ex. 1), the development rights pertaining to the subject parcel were conveyed to the State of Connecticut, pursuant to Gen. Stats. Sec. 22-26aa et seq., by the Co-Trustees under the will of Bettina B. Verbeck (hereinafter, the "Verbeck Estate"). The subject parcel, designated as Lot 3, was part of a fourteen-lot subdivision which on February 10, 1986 had been resubdivided into ten lots (Ptf. Ex. 4). Five of the original fourteen had previously been sold. The resubdivision combined five of the then remaining lots as the present Lot 3. The stated purpose of this resubdivision was to enable the Verbeck Estate to sell the development rights in the revised Lot 3 and "to limit the use of the property contained in Lot 3 to agricultural uses, in accordance with Connecticut General Statutes Section 22-26aa" (Ptf. Ex. 4).
Thereafter, the following relevant conveyances occurred: CT Page 6355
 (1) By deed recorded on June 16, 1986, the Verbeck Estate conveyed Lots 2, 13, 14 and the subject Lot 3 to Larchmeadow Farm Preservation Corporation for a total price noted thereon of $532,000. (Dft. Ex. A).
 2) By deed recorded on January 31, 1987, Lot 3 was conveyed by Larchmeadow to its principal, Andre J. Melief et al., for $120,000. (Dft. Ex. B).
 (3) By deed also recorded on January 31, 1987, Lot 3 was conveyed by Melief to Plaintiff's principal, Adolph Mueller, II, for $120,000 (Ptf. Ex. 2).
 (4) By deed recorded on April 5, 1990, Mueller conveyed Lot 3 together with Lots 2 and 13 to the Plaintiff (Ptf. Ex. 3). (In the interim, Mueller had acquired Melief's interest in Larchmeadow, and presumably had acquired Lots 2 and 13.)
Chapter 422a stems from Public Act 78-232. The purpose of this statute, as set forth in Sec. 22-26aa, is to provide a statewide program for preservation of agricultural land. The State, acting through the Commissioner of Agriculture, is authorized to acquire the development rights to agricultural land. Sec. 22-26cc. Pertinent definitions, including that of "agricultural land" and "development rights" are set forth in Sec. 22-26bb.
Section 22-26bb, as it existed at the time of the conveyance by the Verbeck Estate of the development rights to the subject parcel (Ptf. Ex. 7), is in relevant part substantially the same as the present Sec. 22-26bb
Subsections (a) — (e) inclusive. The present Subsections (f) — (p) were added subsequently. Subsection (d), as then in effect and now, defines "development rights" in relevant part as follows:
 (d) "Development rights" means the rights of the fee simple owner of agricultural land to develop, construct on, sell, lease or otherwise improve the agricultural land for uses that result in rendering such land no longer agricultural land, but shall not be construed to include . . . construction thereon of residences for persons directly incidental to farm operation. . . , except that new construction . . . on prime farmland . . . shall be limited to not more than five per cent of the total of such prime farmland. . .
The term "persons directly incidental to farm operation" was not defined in Sec. 22-26bb as it existed at the date of the subject development rights conveyance. Public Act 89-226 added the present Subsection (p), which provides as follows: CT Page 6356
 (p) "Persons directly incidental to the farm operation" means any person who participates in the farm operation on the restricted land on a full-time basis and any owner of the restricted land regardless of whether or not he participates in the farm operation on a full-time basis.
Section 22-26cc provides the valuation methodology for acquisition of development rights by the State. Basically, the value of development rights is the difference between the value of the property for its highest and best use and its value for agricultural purposes.
The herein development rights conveyance deed (Ptf. Ex. 1) imposes appropriate restrictive covenants upon the subject parcel in conformity with the statute. These restrictions, inter alia, prohibit subdivision, development or improvement of the premises for residential, commercial and/or industrial purposes, or for uses that render the premises no longer agricultural land.
The Town's assessor, as the result of the revaluation process, initially set the fair market value of the subject parcel at $543,800 (resulting in an assessment of $380,660). The Board of Tax Review reduced fair market value to $378,280 (resulting in an assessment of $264,800). Both followed a similar valuation format (Dft. Ex. F).
First, a primary site of 1.84 acres, representing the minimum permitted residential lot size, was valued at $100,000 reduced by 20% to $80,000. Next, a secondary site of five acres was valued at $50,000 ($10,000 per acre). The divergence involved the remaining 110.347 acres, which each as a preliminary step valued at $1,103,470 ($10,000 per acre), reduced with a 75% size reduction factor to $827,600. The assessor reduced this to $413,800 by applying a further reduction factor of 50%. The Board increased this further reduction factor to 70%, resulting in a value of $248,280.
To summarize:
 Assessor Board of Tax Review -------- ------------------- 1.84 acres $ 80,000 $ 80,000 5.00 acres 50,000 50,000 110.347 acres 413,800 248,280 — ----------- -------- -------- 117.187 acres $547,800 $378,200
In essence, as the Town's assessor so testified, both the assessor and the Board valued the parcel as a single 117 acre residential building lot. CT Page 6357
At trial, Defendant offered the expert testimony of the Town assessor, Lauren J. Elliott, who had become the Town's assessor in July of the 1990 revaluation year. Elliott, however, testified in her capacity as a qualified independent appraiser, not in her official capacity as assessor. Finding no comparable sales from Litchfield County, Elliott instead offered as comparables two 1989-90 sales from Tolland County. Elliott opined to a fair market value of $378,280 (Dft. Ex. E), identical to the reduced value set by the Defendant Board. In her view, the subject parcel is essentially a single 117 acre residential building lot.
Plaintiff offered the expert testimony of Arthur Oles, an MAI appraiser with prior experience in appraisal of development rights. Oles limited his comparables to Litchfield County, which in his opinion constitutes the proper relevant market area. The Court concurs. His four comparables, covering 1984-88, indicated a value of approximately $1,000 per acre for land no longer possessing development rights. A key sale was the January 1987 sale of the subject parcel from Melief to Mueller (Ptf. Ex. 2) for $120,000 (or $1,024 per acre). Opining that land without development rights experienced no appreciable value increase or decrease between 1987 and 1990, Oles found the fair market value of the subject parcel as of October 1, 1990 to be $120,000 (Ptf. Ex. 5).
In an appeal from the action of a board of tax review, the function of the trial court is the ascertainment of the true and actual value of the plaintiff's property. Dickau v. Glastonbury, 156 Conn. 437, 444
(1968). While proper deference should be accorded to the assessor's valuation, such deference is not a presumption in favor of the validity of the assessment which it is the plaintiff's burden to rebut. Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589 (1987). Mere overvaluation is sufficient to justify redress, and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resuited in substantial overvaluation. Newbury Commons Limited Partnership v. Stamford, 226 Conn. 92, 104 (1993).
The subject parcel no longer possesses development rights. It cannot be developed or improved for general residential purposes. The parcel is essentially restricted to agricultural uses as defined in Gen. Stats. Sec.1-1(q). Construction and use of a residence thereon is strictly limited. Plaintiff has satisfied its initial burden of proof. The parcel has been overvalued by the Defendant.
The Court concurs with the valuation as opined to by Plaintiff's expert. The period covered by his three most recent comparables, December 1986 to July 1988 (Ptf. Ex. 5), is sufficient, particularly in view of CT Page 6358 the limited number of such sales and the consistency of per acre price. No credible evidence was offered to indicate that the 1987 sale of the subject parcel from Melief to Mueller was other than a fully negotiated arms-length transaction evidencing fair market value.
 Fair market value is "the price that would probably result from fair negotiations between a willing seller and a willing buyer." Connecticut Printers, Inc. v. Redevelopment Agency, 159 Conn. 407, 410 (1970).
Gebrian v. Bristol Redevelopment Agency, 171 Conn. 565, 571 (1976). There was no evidence that the subject parcel had appreciably increased in value after 1987.
Defendant's claim that Plaintiff admitted a $600,000 value in 1989 is not supported by the evidence. The proffered financial statement (Dft. Ex. G) indicated that numbers of disparate properties were combined to reach that figure.
Defendant's assertion that it was incumbent upon Plaintiff to apply for farmland classification under Gen. Stats. Sec. 12-107c (1963 Public Act 490) is likewise without merit. That section, and its valuation counterpart in Sec. 12-63, represent a different statutory scheme.
The Court does not rule out the possibility that under appropriate circumstances not here present, a portion of land without development rights may be valued for assessment purposes as residential land. A residential dwelling was in the process of construction on one of the comparables used by Defendant's expert and the other was purchased for a homesite. There was no evidence that such was the case regarding the subject parcel, which is unimproved and apparently without suitable access.
The Court finds the fair market value of the subject parcel for purposes of the lists of October 1, 1990, October 1, 1991 and October 1, 1992 to be $120,000.
Judgment may enter for the Plaintiff accordingly.
FINEBERG, J.