[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION #170 DEFENDANT'S APPEAL FROM THE DECISION OF THE FAMILY SUPPORT MAGISTRATE
Presently before this court is the defendant's appeal from the decision of Family Support Magistrate Matasavage, rendered in the Waterbury Superior Court on June 22, 1998, wherein the magistrate denied the defendant's motion to modify child support, entered an order that support payments, including payment on an arrearage, be temporarily suspended until the defendant was again employable and continued the matter until November 5, 1998. Specifically, Magistrate Matasavage stated that he was entering "a temporary order suspending any current support so the current support order is going to be zero. I'll suspend any payment on the arrearage, and this will be a temporary order." (Transcript pp. 32.) Counsel for the defendant recognized the order to be "temporary" in nature and stated on the record that he believed the defendant was entitled to a final order on the motion to modify. (Transcript pp. 32-33.)
Magistrate Matasavage also found that the defendant could not prevail on her claim that she should not be liable to pay the arrearage based on waiver, estoppel or laches. According to the defendant's testimony, the plaintiff would not allow her to see her child and as a result she told the plaintiff she would not pay child support. The defendant also testified that the plaintiff told her he did not want her money or anything to do with her. The plaintiff was present during the hearing but did CT Page 860 not testify and was not represented by counsel.
The defendant argues that the magistrate's refusal to enter a final decision on the motion to modify violates General Statutes § 51-183b. The appeal from Magistrate Matasavage's June 22, 1998 decision was filed with the court on July 6, 1998 and argued before this court on October 15, 1998.
General Statutes § 46b-231(n)(1) provides that "[a] person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section." The court will first determine whether the magistrate's decision in this case presents a judgment or decision from which an appeal can be taken.
The test for determining whether a claimant is aggrieved by a particular decision is two-fold: (1) the party claiming to be aggrieved must have a specific, personal and legal interest in the subject matter of the decision, and (2) the party must show that this personal and legal interest has been specially and injuriously affected by the decision. Newman v. Newman,235 Conn. 82, 103, 663 A.2d 980 (1995). The court finds that the defendant is aggrieved for the purposes of this appeal because the magistrate's decision denying the motion to modify injuriously affected the defendant's interest.
"A statutory right of appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.) Raines v. Freedomof Information Commission, 221 Conn. 482, 489, 604 A.2d 819
(1992). The court finds that the appeal was filed in a timely manner, within fourteen days of the decision being appealed. See General Statutes § 46b-231(n)(2). Furthermore, counsel certified that service of the appeal upon the pro se party and the office of the Attorney General was made in accordance with General Statutes § 46b-231(n)(2) by certified mail. Transcripts were filed along with the magistrate's decision. Counsel for the defendant also filed a memorandum of law on the issues presented in this appeal.
"The lack of final judgment is a threshold question that implicates the subject matter jurisdiction of [the] court." (Internal quotation marks omitted.) Dacey v. CHRO,41 Conn. App. 1, 4, 673 A.2d 1177 (1996). A final judgment is one "(1) where the order or action terminates a separate and distinct CT Page 861 proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." State v. Curcio, 191 Conn. 27, 31, 463 A.2d 566 (1983). In the present case, instead of granting or denying the defendant's motion for modification of the child support order in effect, the magistrate entered a temporary order suspending support payments and payments toward the existing arrearage and ordered the parties to return to court on November 5, 1998, at which time the court would consider the motion to modify.[1]
Although the orders were temporary they are comparable to pendente lite orders which for purposes of appeal have been found to be final. See Bryant v. Bryant, 228 Conn. 630, 636,637 A.2d 1111 (1994) ("order for temporary alimony and child support immediately appealable"). Thus, the court finds that Magistrate Matasavage's temporary order is appealable.
General Statutes § 46b-231(n)(7) provides that the Superior Court may affirm the decision of the family support magistrate, remand it for further proceedings, or reverse or modify the decision. The Superior Court may reverse or modify a decision if "substantial rights of the appellant have been prejudiced because the decision of the family support magistrate is: (A) in violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the family support magistrate; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The two issues raised on appeal are: (1) whether a family magistrate has the power to enter "temporary" orders; and (2) whether Magistrate Matasavage's decision on the issues of waiver, estoppel and latches was proper. As to the first issue presented, the defendant argues that she is entitled to a final decision pursuant to General Statutes § 51-183b which provides in pertinent part: Any judge of the superior court and any state trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have the power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause." In support of the argument that this statute applies to decisions of the magistrate court, the defendant relies on Keeley v. Sarandrea, Superior Court, judicial district of Waterbury, Docket No. 084547 (June 14, 1993, CT Page 862Harrigan, J.). Judge Harrigan ruled "that § 51-183b applies to [family support magistrate] matters." Id. The distinction between the Keeley case and this case is, however, that the magistrate in Keeley never rendered a decision and simply ordered the hearings to continue due to lack of sufficient evidence. In the present case, however, Magistrate Matasavage did render a decision, albeit entitled a "temporary order," wherein he suspended the current support order of $75 per week and stopped the accumulation of an arrearage from the date of the hearing, June 22, 1998, until a date certain, November 5, 1998, at which time the defendant's employability would be reviewed. This was done because the defendant, between pregnancy and other health related issues, was unable to work or seek employment at the time of the hearing. The court finds that the magistrate's decision did not prejudice the substantial rights of the appellant. See General Statutes § 46b-231(n)(7), supra.
Additionally, General Statutes § 46b-231 was amended by several public acts[2] in both 1997 and 1998. As a result of the amendments to the statute, General Statutes § 46b-231(b)(14), the definitional section, now provides the following: "`Support order' means a judgment, decree or order, whether temporary, final or subject to modification, issued by a court of competent jurisdiction, for the support and maintenance of a child, including a child who has attained the age of majority under the law of the issuing state, or a child and parent with whom the child is living, which provides for monetary support, health care, arrearages or reimbursement, and which may include related costs and fees, interest and penalties, income withholding, attorneys' fees and other relief." Family Support Magistrates have the power to hear and determine all motions for modification of child support. See General Statutes §46b-231(m). Because the statute now sets forth a definition of "support order" and that definition includes the word "temporary", this court concludes that magistrates have the power to issue "temporary" orders. Magistrate Matasavage entered the temporary order on June 22, 1998, at which time the amended statute was in effect. Thus, as to the first issue presented, whether a magistrate may enter a temporary order, the court affirms the decision of Magistrate Matasavage.
Turning to the second issue presented in this appeal, the defendant argues that she should have prevailed on her argument that the plaintiff is not entitled to the arrearage that accumulated over approximately three years because of either CT Page 863 waiver, estoppel or laches. This court reviewed the transcript of the hearing before Magistrate Matasavage and the memorandum of law submitted in support of the defendant's arguments.
"Waiver is the intentional relinquishment of a known right.Olean v. Treglia, 190 Conn. 756, 772, 463 A.2d 242 (1983);Multiplastics, Inc. v. Arch Industries, Inc., 166 Conn. 280, 286,348 A.2d 618 (1974)." Hanover Ins. Co. v. Fireman's Fund Ins.Co., 217 Conn. 340, 351, 586 A.2d 567 (1991). The defendant testified that she had two conversations with the plaintiff and told him that she would stop paying child support if the plaintiff did not let the defendant exercise her visitation rights with their child. (Transcript pp. 14-15.) According to the defendant's testimony the plaintiff basically told her that he did not want her money and did not want her anywhere near the child. (Transcript p. 15.) The defendant claims that by not taking action in court to enforce the child support orders for approximately three years, from August 1994 until July 1997, the plaintiff has waived his rights under the original judgment and is not entitled to an arrearage. The defendant also did not see the child for almost three years because the plaintiff would not allow her to visit with their son but the defendant failed to take any court action to enforce the visitation schedule. Magistrate Matasavage found that the plaintiff did not waive his right to collect child support but that the parties' hostility toward one another was so heightened that the plaintiff simply did not want to deal with the defendant and found avoidance easier to handle. This court agrees with Magistrate Matasavage's findings but for different reasons.
"[A]n order of support and an order of alimony can be modified only by the court." Lownds v. Lownds,41 Conn. Sup. 100, 105-06, 551 A.2d 775 (1988). "It has generally been held that once the court had issued a support order, the parties are not at liberty to substitute their own arrangements without court sanction. See e.g., Goold v. Goold, 11 Conn. App. 268,527 A.2d 696 (1987); Fialko v. Fialko, 6 Conn. L. Rptr. 574 (1992);Samatowitz v. Samatowitz, 4 S.M.D. 30, 33 (1990)." Bennett v.Bennett, Superior Court, judicial district of Litchfield, Docket No. 0063689 (April 24, 1994, Lifshitz, F.S.M.) (8 C.S.C.R. 848). Neither party in the present case sought court sanction for their respective actions but instead attempted to substitute their own arrangements out of anger and frustration. "It is the duty of the court to enter such orders as it believes CT Page 864 to be in the best interests of the children, and it is a responsibility that cannot be delegated or abrogated by agreement of the parties." Lownds v. Lownds, supra, 105.
The defendant also argues that the plaintiff is estopped from collecting the accumulated child support arrearage. "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. 3 Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 804, p. 189; 28 Am. Jur.2d, Estoppel and Waiver § 76; accord Spear-Newman, Inc. v. Modern Floors Corporation,149 Conn. 88, 91, 175 A.2d 565 (1961); Tradesmens National Bankof New Haven v. Minor, 122 Conn. 419, 424, 190 A. 270 (1937);MacKay v. Aetna Life Ins. Co., 118 Conn. 538, 548, 173 A. 783
(1934). Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done. Dickau v. Glastonbury, 156 Conn. 437, 441,242 A.2d 777 (1968); Pet Car Products, Inc. v. Barnett,150 Conn. 42, 53, 184 A.2d 797 (1962); see Bealle v. Nyden's, Inc.,245 F. Sup. 86, 93-94 (D. Conn. 1965); 28 Am. Jur.2d, Estoppel and Waiver § 27, p. 627. Bozzi v. Bozzi, 177 Conn. 232,241-42, 413 A.2d 834 (1979)." (Internal quotation marks omitted.)Emerick v. Emerick, 28 Conn. App. 794, 802-03, 613 A.2d 1351, cert. denied, 224 Conn. 915, 617 A.2d 171 (1992). In the present case, this court concludes that the defendant's action in stopping child support payments was voluntary, and based on her view that keeping the child away from her was in violation of the court order concerning visitation. In other words, what happened in this case was a quid pro quo, unfortunately, however, nothing of value was being exchanged. The only exchange taking place between the parties was all to the child's detriment. "It has never been our law that support payments were conditioned on the ability to exercise rights of visitation or vice versa.Raymond v. Raymond, supra. Rather, [t]he duty to support is wholly independent of the right of visitation. Id. Thus, even if the plaintiff had violated certain orders of the dissolution court regarding the defendant's right of visitation, the defendant would not have been entitled to a modification of support on that basis." Emerick v. Emerick, supra, 802. CT Page 865
The defendant also argues that the plaintiff should not be allowed to collect the arrearage under the doctrine of laches. "Laches consists of two elements. First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. (Internal quotation marks omitted.)Papcun v. Papcun, 181 Conn. 618, 620, 436 A.2d 282 (1980)."Mendillo v. Board of Education, 246 Conn. 456, 487 n. 21, ___ A.2d ___ (1998). As previously stated, "an order of support. . . can be modified only by the court." Lownds v. Lownds, supra, 41 Conn. Sup. 105-06. "It has generally been held that once the court had issued a support order, the parties are not at liberty to substitute their own arrangements without court sanction. See e.g., Goold v. Goold, 11 Conn. App. 268,527 A.2d 696 (1987); Fialko v. Fialko, 6 Conn. L. Rptr. 574 (1992);Samatowitz v. Samatowitz, 4 S.M.D. 30, 33 (1990)." Bennett v.Bennett, Superior Court, judicial district of Litchfield, Docket No. 063689 (April 24, 1994, Lifshitz, F.S.M.) (8 C.S.C.R. 848). In the present case, the plaintiff's delay in enforcing the child support payments and the defendant's delay in seeking visitation with her child were inexcusable. However, the defendant has not been prejudiced by such delay. Although the defendant may have suffered by not seeing her child, the child has suffered both from not seeing his mother and from not receiving financial support from her.
General Statutes § 46b-231(n)(7) provides that the Superior Court may affirm the decision of the family support magistrate, remand it for further proceedings, or reverse or modify the decision. This court affirms the June 22, 1998 decision of the magistrate.
KENEFICK, J.