[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case is an appeal under General Statutes § 12-118 from the final decision of the Board of Tax Review of the defendant City of Hartford (City), rejecting claims by plaintiff Roman E. Chomiak that his properties at 12-14 Allen Place and 12-14 Kenneth Street in Hartford were overassessed by the City Assessor — each at $302,400, based on 70% of a fair market value of CT Page 7687 $432,000 — as part of the October 1, 1989 citywide revaluation. Arguing that the true fair market value of the Allen Place property is $285,000 and of the Kenneth Street property is $290,000, the plaintiff urges this Court to rule that the 70% assessed values of the properties should be reset at $199,500 and $203,000, respectively.
Law
Property tax appeals taken pursuant to General Statutes § 12-118 are conducted de novo. Kimberly-ClarkCorporation v. Dubno, 204 Conn. 137 144 1987). Thus, "[w]hile . . . proper deference should be accorded to the assessor's valuation, [our courts] . . . have never characterized such deference as a presumption in favor of the validity of the assessment which it is the plaintiff's burden to rebut." Stamford Apartments Co. v. Stamford,203 Conn. 586, 589 (1987).
Instead, the plaintiff must simply prove his case by a fair preponderance of the evidence, relying on his own testimony and/or that of other lay or expert witnesses. The trial court, in evaluating the plaintiff's evidence, is not bound by the testimony of the plaintiff's expert(s). Nor is it required to credit all or any part of the testimony of any defense expert. What the court must do is to fully and fairly consider all of the evidence presented, making a reasonable effort to resolve conflicts in the evidence provided with due regard to all the existing circumstances. Whitney Center Inc. v. Hamden,4 Conn. App. 426, 429-30 (1985). In the end the Court must ascertain the true and actual value of the plaintiff's properties,Dickau v. Glastonbury, 156 Conn. 437, 444 (1968) with an eye to determining whether the plaintiff has proved that the City's assessments were excessive.
Facts
In support of his claims of overassessment, the plaintiff has relied on his own testimony and that of Owen Mulligan, a private real estate appraiser who is the President and CEO of Data Facts Corporation of Southington. The plaintiff described generally the history of his own ownership of the subject properties, detailing for the Court the many problems he has had in maintaining them as CT Page 7688 rental properties. The appraiser, Mr. Mulligan, testified to the process by which he arrived at 100% fair market values for both properties.
The defendant City countered the presentation of plaintiff Chomiak with the testimony of private appraiser Anthony J. DeLucco, from DeLucco Associates of Newington. Mr. DeLucco testified that the 100% fair market value of each subject property was $425,000.
Based on the testimony of these witnesses and the documentary evidence they presented in support thereof, the Court makes the following findings of fact:
1. The subject properties are both located in the South End of Hartford, Connecticut.
2. The South End is a neighborhood featuring mixed residential and commercial uses, including many apartment buildings.
3. The property on Allen Place is a level, 5,775±-square-foot parcel of land containing a 3-story brick apartment building which was built in 1926. The building contains twelve 3-room, 1 bedroom apartments, which are heated by hot water from an oil-fired furnace. The building has no elevator and the lot contains no parking area.
4. The property on Kenneth Street is a level, 7,500±-square-foot parcel of land containing a 3-story brick apartment building which was built in 1927. It too contains twelve 3-room, 1-bedroom apartments, which are heated by hot water from an oil-fired furnace, and it, like the Allen Place property, has neither an inside elevator nor a private parking area for tenants.
5. As of October 1, 1989, the apartment buildings on the subject properties were in average condition in view of their age and type of use. Both structures had received normal maintenance over the years. On October 1, 1989, the highest and best use of each subject property, defined as that use which supports its highest present value, was continued use as a residential apartment property. Both properties were and are appropriately zoned for that use. CT Page 7689
6. In assessing the value of real estate, three traditional methods of appraisal are used: the cost approach; the income approach; and the direct sales comparison approach.
7. Under the cost approach to value, the appraiser attempts to determine the cost of producing a substitute property with the same utility as the subject property. Such an approach is most appropriately used either when the property contains very new improvements or when relatively unique or specialized improvements are located on the site and there are no comparable properties on the market. In this case, both the plaintiff's appraiser and the City's appraiser rejected the cost approach to value in view both of the age of the subject properties and of the ready availability of comparable properties on the market. The Court agrees with the appraisers that the cost approach should not be used in this case.
8. The income approach to value is also useful to determine the value of a subject property when there are insufficient sales of comparable properties on the open market to generate a fair comparison. Under that approach, the appraiser attempts to convert the anticipated benefits to be derived from ownership of the property into a value estimate by discounting anticipated future income and/or reversions to a present worth figure through the capitalization process. Though each appraiser calculated the fair market value of the subject properties under the income approach, each also concluded that a sufficient number of comparable properties were bought and sold on the open market in the relevant time period to afford a proper basis for comparison under the direct sales comparison approach to value. Accordingly, the Court is persuaded that the direct sales comparison approach may appropriately be used in this case.
9. Under the direct sales comparison approach to value, the appraiser attempts to identify comparable properties which were bought and sold by willing buyers and sellers in arm's-length transactions on the open market at or shortly before the date of the appraisal, then to derive from their purchase prices the probable purchase price of the subject property by making appropriate adjustments for CT Page 7690 all differences between the properties that might reasonably be expected to affect their market value. Such factors include the nature and quality of the surrounding neighborhood, ease of access to municipal services, the existence of special improvements on the respective premises, the nature and quality of building construction, the existence or non-existence of encumbrances, and a host of other factors.
10. In evaluating the subject properties under the direct sales comparison approach, plaintiff's expert selected six small parcels of land, each containing one multi-family dwelling, which were sold in Hartford during 1989 or 1990. The same six parcels were treated as comparable sales for each of the subject properties.
For each comparable sale, the appraiser testified that he divided the purchase price of the parcel by the total square footage of gross building area, then reduced the resulting quotient to arrive at a per-square-foot price for the subject properties after making certain unspecified deductions to account for the differences between the comparison properties and the subject properties. After completing this process in a manner he could not describe in his testimony, the plaintiff's appraiser arrived at a per-square-foot price of $31 for each of the subject properties, which he multiplied by the gross building area of each apartment building to calculate its fair market values. By using this method, the plaintiff's appraiser determined that the fair market values of the subject properties as follows:
Fair Market Value of 12-14 Allen Place =
$31/sq. ft. x 9,510 sq. ft. =
$294,810 =
$295,000 (rounded off)
Fair Market Value of 12-14 Kenneth Street =
$31/sq. ft. x 9,207 sq. ft. =
$285,417 = CT Page 7691
$285,000 (rounded off)
11. The Court rejects the plaintiff's expert's appraisals for the following reasons:
a. The plaintiff's expert offered no explanation for his use of square footage of gross building area to establish the likely purchase price of the subject properties.
b. The plaintiff's expert disclaimed any ability to describe the basis upon which he adjusted the per-square-foot prices of the comparable sales he utilized to reflect differences between the properties he claimed to be comparable to the subject properties and the subject properties themselves. All adjustments, he testified, were made in accordance with a computer program he had in his office, did not bring with him to court, and either could not or would not explain.
c. The plaintiff's expert purported to differentiate among the values of rental properties based on the ethnicity of the tenants who would likely occupy them. This Court will not dignify such invidious comparisons by considering them in its assessment of fair market value.
12. In evaluating the subject properties under the direct sales comparison approach, the City's expert, Mr. DeLucco, selected four small parcels of land, each containing one multi-family dwelling, which were sold in Hartford during 1989. The same four parcels were treated as comparable sales for each of the subject properties.
For each comparison property, Mr. DeLucco testified that he divided its purchase price by the total number of rental units upon it, then reduced the resulting quotient to arrive at a per-unit price for the subject properties after making deductions to account for the differences between them and the comparison properties. After completing this process, Mr. DeLucco arrived at a per-unit cost of $37,500, which he multiplied by twelve (12) to arrive at a fair market value of $450,000. Mr. DeLucco reduced his overall estimate of value for each building by $25,000, to $425,000, based on his further calculations, CT Page 7692 under the income approach to value, that the Allen Place property was worth $330,000 and the Kenneth Street property was worth $315,000. In the end, he concluded that while both the direct sales comparison and income approaches to value could appropriately be used to assess the subject properties, the former more nearly reflected the true value of those properties on the open market in 1989.
13. The Court agrees with Mr. Delucco that the most appropriate way to determine the fair market value of the subject properties as of 1989 is to determine the per-unit price of comparable properties sold on the open market at that time, to adjust their price to reflect material differences between them and the subject properties, then to multiply that adjusted per-unit price times the number of units in each subject property. For that purpose, the court finds it appropriate to rely on extrapolations made from the sales of two of the four properties examined by Mr. DeLucco.
Mr. DeLucco's first comparable sale, involving an 8800-square-foot parcel containing a multi-family dwelling with 18 units, including six 4-bedroom units, is rejected as a valid comparison property because its six 4-bedroom units cannot fairly be found to have the same market value as the 3-bedroom units in the subject properties. Mr. DeLucco's fourth comparable sale is also rejected as a valid comparison property, for in addition to its eleven rental units, it contains a substantial commercial space.
Mr. DeLucco's second and third comparable sales, however, do afford the Court a valid basis for comparison with the subject properties. Comparable sale #2, located at 49-51 School Street in Hartford, is a .20 ± acre parcel, containing a 3-story, 12-unit brick apartment building constructed in 1924. Featuring ten 3-bedroom and two 4-bedroom apartments, this building sold on June 21, 1989 for $510,000. Its per-unit sales price of $42,500 was adjusted downwards by 20% by Mr. DeLucco to reflect its larger gross building area and number of bedrooms, for an extrapolated per-unit price of $34,000. Mr. DeLucco's third comparable sale, located at 19-25 Colonial Street in Hartford, is a .22 ± acre parcel which contains a 3-story, 12-unit brick apartment building built in 1925. Featuring twelve 3-room apartments, this building sold on August 10, 1989 for CT Page 7693 $380,000. Its per-unit sales price of $31,667 was adjusted downwards by Mr. DeLucco by 5% to reflect its slightly larger lot size and building area, for an extrapolated per-unit price of $30,000.
Averaging the adjusted per-unit price derived from Mr. DeLucco's second and third comparable sales, the Court finds that a per-unit sales price of $32,000 should be applied to both subject properties, for a fair market value of $384,000, each. This value is confirmed by deriving an unadjusted per-unit price from the sales price of each of Mr. Mulligan's first three comparable sales. Each such property is a 3-story, 12-unit brick apartment building which was built in the 1920s and sold in Hartford in 1989. The per-unit sales prices of those properties were $30,833, $41,667 and $22,083, respectively. The average per-unit sales price of these three properties is approximately $31,500.
In conclusion, the Court finds that the fair market value of each of the subject properties on October 1, 1989 was $384,000. Accordingly, the assessed value of each of the subject properties on October 1, 1989, calculated at 70% of fair market value, must be reset at $268,000.
It is so ordered this 25th day of July, 1994.
Michael R. Sheldon Judge