[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By their amended complaint, dated August 19, 1992 the plaintiffs, Middletown Commercial Associates, Limited Partnership (MCALP) and Simon Konover (Konover), in seven counts are essentially claiming breach of contract, breach of the implied covenant of good faith and fair dealing, breach of easement and inverse condemnation against the defendants, City of Middletown (City), the Middletown Parking Authority (Parking Authority) and One Court Street, Inc. (Court Street). The defendants have answered and assert special defenses sounding in laches, clean hands, waiver, estoppel, abandonment of contract, rule against perpetuities and void contract.
On September 13, 1994, the parties being at issue, trial was commenced to the court. The court, on its own motion, bifurcated the trial into two phases, i.e., liability, and, if such were found, the case would be rescheduled for a hearing in damages.
All parties present and/or represented by counsel, trial was held as to liability. CT Page 12013
After a full trial, the court, by a preponderance of the credible, relevant and legally admissible evidence finds the facts, determines, concludes and rules as follows:
The plaintiff MCALP is a Connecticut limited partnership with offices located in West Hartford, Connecticut.
The plaintiff, Konover, is an individual who resides in West Hartford, Connecticut.
The defendant, City, is a specially chartered municipal corporation existing under the laws of the State of Connecticut.
The defendant, Parking Authority, is an agency or instrumentality of the City, charged with the operation of parking facilities owned by the City.
The defendant, Court Street, is a Connecticut Corporation having an address c/o Hambro Capital, Inc., 919 Third Avenue, New York, New York.
On or about May 4, 1959, the City, acting through its Common Council, approved a plan, (the "Redevelopment Plan") providing for the acquisition, clearance and redevelopment of certain property within the City and bounded generally by Main Street on the west, Court Street on the north, east by DeKoven Drive and south by College Street (Project Area).
The redevelopment plan provided, inter alia, for the construction by the city of a multi-level parking facility in the project area.
The City, through eminent domain acquired the subject property in accordance with the development plan.
On or about March 6, 1963, the City entered into an agreement with River Valley Development Company (Redeveloper), pursuant to which the Redeveloper agreed to purchase from the City two certain parcels within the project area to redevelop in accordance with the redevelopment plan and the agreement. The parcels purchased by the Redeveloper were Parcel AA and Parcel AC as shown on the disposition map of The Center Street Redevelopment Project and filed as Map No. 2614 in the Middletown Town Clerk's Office. CT Page 12014
On or about October 9, 1963, the City and the Redeveloper entered into an agreement (parking agreement) under the terms of which the parties agreed, inter alia, that:
(a) The City would provide a multi-level parking facility to accommodate not less than 600 cars on a portion of the project shown as Parcel AB on the aforesaid map 2614.
(b) The Redeveloper, its successors, tenants, subtenants and assigns, shall have the right of reasonable ingress and egress to and from said parking facility to Parcels AA and AC.
(c) The Redeveloper shall have the privilege to allow its tenants, subtenants and their customers to park in the parking garage free of charge for the first hour of parking, in return for which the Redeveloper shall pay the City a "minimum annual guarantee" of $9,000.00, together with other payments calculated on an annual basis as set forth in the parking agreement.
(d) The Redeveloper had the right of first refusal with respect to the sale of the City's right in Parcel AB.
Paragraph 6 of the parking agreement specifically provides as follows: "This agreement shall inure to and be binding upon the successors and assigns of the parties hereto."
The parking agreement recited a term of 35 years, commencing from the formal opening of the Sears store within the project area. Said store opened April 19, 1965.
The City constructed a multi-level parking garage on Parcel AB. However, although the parking agreement called for parking for 600 cars the number of parking spaces actually provided did not exceed 565. No party has ever filed any objection to the failure of the City to provide 600 parking spaces as called for in the agreement.
The parking agreement was entered into by the City, signed by the then Mayor, John S. Ruth and River Valley Development Company, signed by Atwood Collins, II its president.
In subsequent years, title to Parcels AA and AC has been transferred a number of times to various entities. Parcel AC was partitioned in August 1976 by the then owner, Hartford National CT Page 12015 Bank and Trust Company (Hartford National Bank) and title to the buildings and improvements only on Parcel AA and the southerly portion of AC were transferred to Konover and his then business partner, Patron. Thereafter, Hartford National Bank transferred the remaining, or northerly portion of Parcel AC to David L. Silk, George R. Brown, Jr. and John P. Wollack (Brown, Silk and Wollock). Further, various interests in Parcel AA and the southerly portion of Parcel AC was transferred back and forth between Konover, Patron and Konovers' wife Doris Konover. In 1989, Patron transferred his interest in Parcel AA and the southerly portion of Parcel AC to Konover and MCALP. Konover Management Company is the general partner of MCALP and manages the property located on Parcel AA and the southerly portion of AC. Doris Konover transferred her interest to Konover in March of 1992. Brown, Silk and Wollack retained title to the northerly portion of Parcel AC until they transferred their interest to One Court Street in 1991.
On September 18, 1990, the Connecticut Department of Public Works (DPW) published a request for a proposal (RFP) for a new courthouse in Middletown. In response to the RFP, in January of 1991, Konover and Associates, Inc., (Konover and Assoc.) and a team which included the Daylar Group and Northland Development Corporation (One Court Street Team) submitted competing proposals for a new courthouse facility to DPW. Each proposal required the closing of a portion of the parking facility to accommodate the construction of a new courthouse and/or a new parking garage for the courthouse. The proposal of Konover and Associates required the demolition of approximately one-half of the parking arcade and the proposal of the One Court Street team required the demolition of approximately one-third of the parking arcade.
At no time during the presentations of the respective proposals before the various agencies of the City, did the plaintiffs voice any objection to the proposed partial demolitions of the parking arcade and the use of the parking facility for the purpose of construction of a new courthouse or a courthouse garage on the grounds that it would violate the alleged parking agreement.
On April 16, 1991, CPW approved the proposal of the One Court Street Team and notified Konover and Associates that their proposal was rejected. The Middletown Planning and Zoning Commission, after notice and hearings without objection, subdivided Parcel AB so that the northerly one-third of the CT Page 12016 parcel could be transferred to One Court Street and demolition of that part of the parking arcade could be accomplished.
On December 6, 1991, the City transferred the re-subdivided northerly portion of Parcel AB to One Court Street and on December 9, 1991, Brown, Silk and Wollack transferred the northerly portion of Parcel AC to One Court Street.
On April 6, 1992, as demolition and construction of the new courthouse and garage was imminent, the plaintiffs commenced an action against the City and Parking Authority alleging, among other things, a breach of the parking agreement and an easement. Also sought was a temporary injunction seeking to enjoin the City and the Parking Authority from temporarily closing the parking arcade and allowing the demolition of the northerly portion of the parking facility.
After hearings held on the temporary injunction, the court, Austin, J., issued his decision denying the temporary injunction, and holding therein that the parking agreement did not create an easement.
Following the courts denial of the plaintiff's application for a temporary injunction, the City closed down the parking arcade during the month of March, 1992. The parking arcade was partly reopened on June 2, 1992 and from then until October 6, 1993 there were 195 parking spaces available in the parking arcade. Many of the monthly parkers were relocated during this time period to the Middlesex Mutual Insurance Company's parking garage. On October 6, 1993, the upper level of the parking arcade was reopened and the number of spaces were increased to its present level of 365 spaces. These spaces added to the 365 spaces in the newly built courthouse garage equal 730 spaces. Approximately sixty more spaces than existed before the partial demolition of the arcade.
Although, as indicated above Parcels AA and AC have been partitioned and/or transferred numerous times, the parking agreement entered into by the City and the original Redeveloper has never been mentioned or referred to in any of the conveying deeds. The deeds recite a transfer of all interests as of record may appear. The parking agreement never appeared of record until after the proposal of the Court Street Team was accepted by the DPW. CT Page 12017
The parking agreement was a contract between the City and the original Redeveloper. There has never been an assignment of any contractual rights in the parking agreement and no assumption of any contractual obligations, under said agreement, by One Court Street. We note that the parking authority was never a signatory to the parking agreement.
The City's contractual obligations under the parking agreement did not inure to the benefit of subsequent land owners because there was never a duly executed assignment from the original developer to any subsequent land owner.
The court expressly concludes that the failure to the original Redeveloper, intervening and subsequent grantees to expressly assign, either in writing or orally, any rights under the parking agreement renders same unenforceable by the plaintiffs since there is no privity of contract between the plaintiffs and the defendants as far as the subject parking agreement, dated October 7, 1963, is concerned.
Consequently, since there was no enforceable contract the provision of the right of first refusal is likewise unenforceable. Had the court found an enforceable agreement, there would be no enforceable right of first refusal because the land had been partitioned. See Nicotra v. Wieler InvestmentManagement, Inc. v. Grower, 207 Conn. 441, 446 (1988).
Although, the plaintiffs continued to pay to the City the sum of $9,000.00 per year, the sum indicated in the parking agreement, said payments are the functional equivalent of the payment of rent. The present or last arrangement between the city and me defendants can best be categorized, defacto, as a month to month tenancy wherein the plaintiffs, for the privilege of one or two hours free parking for the plaintiffs tenants and their customers and the tenants employees, pays to the City the sum of $750.00 per month.
Because the court finds that there was no valid assignment of the parking agreement to any subsequent holder of title to Parcels AA and AC and, therefore, no enforceable contract between the parties, judgment should enter for the defendant City and Parking Authority on count one of the plaintiffs amended complaint, and judgment should enter for the defendant, One Court Street on count two of the plaintiffs amended complaint. CT Page 12018
Count three of the plaintiffs complaint fails because the implied warranty of good faith and fair dealing arises from a contractual relation between the parties, therefore in no contractual relationship between the parties exists, as this court has found, a party cannot prevail on an implied covenant contained therein. Further, the court was presented with no evidence of any overt acts on the part of the City or the Parking Authority that rises to the level of a breach of an implied covenant of good faith and fair dealing.
Accordingly, judgment should enter for the defendants City and the Parking Authority on the third count of the plaintiffs amended complaint.
The court agrees with the conclusions set forth in the courts', Walsh, J., decision granting the defendant, One Court Street's, motion for summary judgment on the fifth count of the plaintiffs amended complaint.
Judge Walsh stated:
 "The allegations set forth in count five sound in equitable estoppel. See Bozzi v. Bozzi, 177 Conn. 232, 241, 413 A.2d 834 (1979). It is well settled law that equitable estoppel cannot be asserted as a cause of action, since the Connecticut Supreme Court has repeatedly held that "[e]quitable estoppel is available only for protection and cannot be used as a weapon of assault." Dickau v. Glastonbury, 156 Conn. 437, 442, 242 A.2d 777 (1968), quoting Hebb v. Zoning Board of Appeals, 150 Conn. 539, 543, 192 Conn. A.2d 206 (1963); Robinson v. Atterbury, 135 Conn. 517, 520, 66 A.2d 593 (1949), Lake Garda Improvement Assn. v. Lake Garde Co., 135 Conn. 240, 242, 63 A.2d 145 (1948). The allegations in count five of the plaintiffs complaint are inappropriate in the context of this case, and the summary judgment of the fifth count of the plaintiffs complaint is therefore granted."
Accordingly, for the same reasons set forth above by Judge Walsh, judgment should enter for the defendants City and the Parking Authority on court four of the plaintiffs amended complaint.
The plaintiffs sixth count claiming that the parking agreement created an easement is without merit. The court agrees CT Page 12019 with Judge Austin who stated "[t]he parking agreement in view of the court, does not constitute an easement," and found, "the parking agreement merely shifts the charges for parking in the parking arcade, from the customers of Riverview Center to the owners of Riverview Center and provides for a schedule of charges to be assessed the owners of Riverview Center. No interest in land is provided to the owners of Riverview Center." See, Breenv. Phelps, 186 Conn. 86, 99 (1982).
In addition, the parking agreement fails to conform to the statutory requirements to create an interest inuring to the land.See, General Statute Section 47-5.
This court, based on the facts and circumstances of this case and the reasonable inferences therefrom, expressly finds that the City never intended to grant an easement and no fact did not grant an easement to the Redeveloper and further it was not the intention of the Redeveloper to receive a grant of easement.
Accordingly, judgment should enter for the defendants, City, Parking Authority and One Court Street on count six of the plaintiffs complaint.
In count seven, the plaintiffs claim that the defendants City and the Parking Authority by conveying the northerly portion of Parcel AB to One Court Street, the closing of and the partial demolition of the parking arcade and the resulting reduction in parking spaces in the arcade constitutes a taking without just compensation in violation of the defendants' state and federal constitution rights.
The court finds that there was no unlawful taking of any property rights of the defendants. Firstly, the defendant has no easement rights in the parking arcade, and, secondly, there has in fact been no diminution in the number of spaces utilized by the defendants tenants. In fact, since the advent of the parking agreement there are hundreds more spaces in the vicinage of the project area. These include the reopened Arcade, the Metro parking area, the Middlesex Mutual Parking Garage, the newly opened Courthouse Garage and the spaces available in the parking areas enterable from Washington Street and Court Street lying between the Main Street stores and the old courthouse.
The court expressly finds that 600 spaces were never intended for the exclusive use of the defendants tenants. In fact, the CT Page 12020 plaintiffs tenants never utilized the full number of spaces available in the parking arcade. The City through the parking authority rented out spaces to other entities including city employees, courthouse staff and through contractual arrangements with other tenants of the plaintiffs.
The court expressly construes the original contract as requiring a minimum of 600 spaces in order to accommodate the needs of the public and to ensure that a reasonable number of spaces were available for the tenants and their customers.
The court finds that there exists at the time of trial a reasonable number of parking spaces in the vicinage to accommodate the needs of tenants of the plaintiffs.
There has been no unconstitutional taking, and, accordingly judgment should enter for the defendants City and Parking Authority on count seven of the plaintiffs complaint.
In summation, the court makes the following findings of fact based on the preponderance of the credible, relevant and legally admissible evidence presented at the trial.
1. The plaintiff City and the Redeveloper entered into a parking agreement wherein the City was to build a parking garage containing not less than 600 parking spaces and that the Redeveloper would have the right of first refusal if the parking facility was sold.
2. Said parking agreement was personal between the parties and did not create an interest running with the land.
3. The City and the Redeveloper did not intend to create an easement running with the land.
4. The contract rights and obligations created under the parking agreement although "binding on the successors and assigns" of the parties, were never assigned orally or in writing to any subsequent land owners.
5. The subject premises were partitioned thereby negating and rendering unenforceable any right of first refusal.
6. No unconstitutional taking ever occurred. CT Page 12021
7. The plaintiffs did not have exclusive rights to the parking facilities.
8. If the agreement were enforceable between the present parties, the agreement required the maintenance, by the City, of sufficient parking facilities to accommodate the needs of the general public and of the plaintiffs tenants and their customers.
9. The City provides sufficient parking spaces to satisfy the needs of the plaintiffs tenants and their customers and the needs of the general public, which would be reasonable conformance under the facts and circumstances in this case.
The court has not been persuaded that it should reverse its decision denying the plaintiffs motion to add an additional plaintiff. Such motion was untimely and prejudicial to the defendants.
Accordingly, the court having found the issues for the defendant on all counts of the plaintiffs complaint, orders that judgment enter for the defendants, as named, on each count of the plaintiffs complaint, with costs.
SPALLONE STATE TRIAL REFEREE
Judgment entered in accordance with Foregoing Memorandum of Decision.
Michael Kokoszka, Chief Clerk